IN THE MATTER OF THE PETITION OF LESTER H. CLEE, TO CONTEST THE ELECTION OF A. HARRY MOORE, AS GOVERNOR.

Argued December 28, 1937—Decided January 11, 1938.

For the motion, *Edward J. O'Mara* and *Charles Hershenstein*.

*Contra, Robert H. McCarter, Jacob J. Levy* and *William E. Sewell*.

BROGAN, CHIEF JUSTICE. On November 30th, 1937, the contestant, Lester H. Clee, filed a petition in the office of

the clerk of the Supreme Court to contest the election of A. Harry Moore as governor of the State of New Jersey. This was done under the statute applicable to a case of this sort ("An act to regulate elections," Revision of 1930, article XXVI). On the application of counsel for contestant, a date was set for hearing said complaint in accordance with said statute (paragraph 358, section 4).

In the meanwhile, counsel for incumbent served his adversary with notice of motion to strike out the petition on several grounds, the most important of which is that the petition does not state a case for contest as required by the statute, *supra*. It is the legal question thus raised that is now presented for determination.

At the outset, two arguments are made by the contestant in support of the retention of the petition and the hearing of its complaint—first, that the court has no power to grant the motion, and, second, assuming the power, "no valid reason is presented for its exercise."

First—In support of the proposition that there is no jurisdiction to entertain such motion and act upon it, no authority is advanced. It is argued that the court sits in cases of this character, not in a judicial but purely in a ministerial capacity, *i. e.,* as an "electoral adjunct," as the contestant's brief has it, and that the court has no power except that expressly bestowed. All this may, for the moment, be conceded and yet as I read the statute (*supra,* paragraph 356, section 2; paragraph 368, section 14), it contemplates that the petition may be subject to motion to dismiss. The former section of the statute (356, section 2) has to do *inter alia,* with the requirement that the contestant shall file a bond conditioned to pay costs if the election be confirmed *"or the petition be dismissed,"* &c. The latter section of the statute (paragraph 368, section 14) also fixes liability upon the parties "for costs, made by them, respectively;" it further provides for costs against the contestant if the election be confirmed *"or the petition dismissed* or the prosecution fail,"* &c. Again the statute (paragraph 359, section 5) ordains that the proceedings shall be "similar to those in an action

at law *so far as practicable,"* &c., and, this being so, can it be reasonably argued that a party may not address a motion to any pleading in an action at law on the ground that it is legally insufficient? I think not. Thus far the statute.

We turn now to the adjudications construing this statute.

In the case of *Cleary* v. *Kendall,* 13 *N. J. L. J.* 134, Mr. Justice Garrison, sitting in the Camden Circuit, considered the sufficiency of a petition in a contested election case, where the incumbent, in an answer, admitted facts which would deprive him of office in favor of the contestant, and said, "* * * I am without power to proceed. This is a strictly statutory proceeding and unless the requirements of the act are complied with the court has no more right over the parties or the subject-matter than a justice has in a landlord and tenant case where the affidavit fails to disclose facts constituting a tenancy. The petition must be dismissed." In *Lehlbach* v. *Haynes,* 54 *N. J. L.* 77, Mr. Justice Dixon, writing for the Supreme Court (the question having been certified from the Essex Circuit), advised that the petition be dismissed because it did not set forth ground sufficient to initiate a contest under the statute. To the same effect was the ruling of Mr. Justice Depue in the matter of the *Election of the Register of Essex County,* 12 *N. J. L. J.* 271. He followed the reasoning of Judge Parker in *Burrough* v. *Branning,* 9 *Id.* 110, to which he refers as a "leading case on this subject." In this latter case, the court struck out part of an answer which set up new matter, to wit, fraud in certain districts by which it was alleged the contestant benefited, the court holding that such part of the answer was in reality a cross-petition and that as such it did not meet the statutory requirements. This practice of considering the sufficiency of a petition in a contested election case was also followed by the late Chief Justice Gummere, when he sat in the Warren County Circuit in the case of *Hance* v. *Spangenberg,* 18 *Id.* 184; see, also, *Wadsworth* v. *Harrison,* 46 *Id.* 329; *Johnson* v. *Allen,* 55 *N. J. L.* 400; *Groth* v. *Schlemm,* 65 *Id.* 431. In the Johnson case, *supra,* the trial tribunal overruled an objection to the case being heard and, proceeding with the

hearing, found that the election resulted in a tie, and unseated the incumbent. The Supreme Court, on appeal, reversed and held that the objection to the hearing because of the defect complained of was well taken, and ordered the Circuit Court to dismiss the petition. I entertain no doubt as to the power and duty of the court under the statute and the cases to entertain such motion. I have heretofore followed such practice.

For example, in the month of December, 1934, a petition was presented to me, challenging the election of Harold G. Hoffman, who had, in November of that year, been elected governor of the State of New Jersey. The petition, made by John J. Carey, Jr., and others, was signed by thirty legal voters of the state and verified by two of the signers. The petition, accompanied by a bond, was presented to me *ex parte,* under the statute, and, after an examination of the statute and the cases in our reports, I concluded that the petition was insufficient to bring on a contest, declined to approve the bond, and dismissed the application. Later, and prior to the January term of the Supreme Court (1935), counsel for said petitioners served upon me notice of an application for *mandamus* to compel me to approve the bond, &c., so that the petition might be filed. The application was heard by Part II of the Supreme Court on January 16th, 1935 (case No. 261 on the calendar), and was denied the same day.

That the court should have jurisdiction to pass upon the sufficiency of the petition seems to be an indispensable necessity. Suppose a petition is filed which, on its face, conceding all its allegations to be true, would neither challenge nor change the result, is the court powerless to do aught but go through a useless and nugatory proceeding? The law does not compel the undertaking of a futile thing.

Counsel for contestant relies upon the case, entitled *In re Margarum,* 55 *N. J. L.* 12, in support of the point that the court lacks jurisdiction to consider, on motion, the legal validity of the petition. I do not so read that opinion. It holds that the court, in cases of this kind, acts as a statutory agent, does not sit *in curia* and may not call upon the Supreme Court for its advisory opinion touching any matter arising

in the course of such proceedings. The other cases cited by contestant do not support his contention in this respect and require no discussion. Singularly enough, there soon was a complete departure from the determination arrived at by Chief Justice Beasley in the Margarum case for, not long after, we find a court made up of Chief Justice Depue and Justices Gummere, Ludlow and Fort accepting a certified case and determining the adequacy of a petition. *Groth* v. *Schlemm, supra; Riesenberger* v. *Phelan, 65 Id.* 437.

On the first point, therefore, my conclusion is that the argument that the court lacks power to pass upon the sufficiency of a petition in a case contesting an election is utterly without substance.

Second—The merits of the petition and the legal sufficiency of its allegations will now be considered.

The grounds upon which a nomination or election to any office may be contested are stated in article XXVI, paragraph 355, section 1 of the statute, *supra.* Such contest may be had upon one or more of the following grounds, to wit: (1) misconduct, fraud or corruption on the part of the election officers sufficient to *challenge* the result; (2) ineligibility of the incumbent; (3) when the incumbent has been disfranchised because of conviction for crime; (4) when the incumbent has been guilty of bribery for the purpose of procuring his election; (5) when illegal votes have been received or legal votes rejected in a number sufficient to *change* the result; (6) for error made by the board of canvassers, if the error would *change* the result; (7) for any other cause which shows that another person was legally elected; (8) for unlawful and excess expenditures; (9) when petition for nomination is not filed in good faith or the affidavit thereto is false or defective.

Most of these grounds for contest are inapplicable in the present case, and the petition before me manifestly relies upon three of the stated grounds, namely, the first, the fifth and the seventh, which, in the interest of clarity, will be stated word for word:

"(1) Malconduct, fraud or corruption on the part of the members of any district board or of any members of the board of canvassers, sufficient to challenge the result.

\* \* \* \* \* \* \*

"(V) When illegal votes have been received or legal votes rejected at the polls, sufficient to change the result.

\* \* \* \* \* \* \*

"(VII) For any other cause which shows that another person was legally elected."

It will be noticed that the malconduct, fraud or corruption, stated as a ground for contest under the first heading, must be such as to *challenge* the result of the election.

"Challenge" means to put into dispute or to put in question. It is defined thus: "To call in question; dispute." (Funk & Wagnalls New Standard Dictionary, 1932.)

The charges set out in the petition are as follows:

"'A.'—In the election districts in the County of Hudson, more particularly herein set forth in Schedule 'A,' which is annexed hereto and made a part hereof, the members of the district election boards fraudulently violated the provisions contained in paragraph 178, section 13, of an Act to Regulate Elections (Revision of 1930), with the various amendments thereto and the supplements thereof, in that they fraudulently and wholly failed to compare the signatures made in the poll books by the applicants for the ballots with the signatures theretofore made by the registered voters whose names were being voted upon in the signature copy registers being in localities where there was permanent registration and to ascertain if said signatures thus written in the poll books were the same or sufficiently similar to the signatures in the signature copy registers prior to giving the said prospective voters a ballot; and this they fraudulently failed to do in all of the districts, wards and municipalities, set forth in said Schedule 'A.'

"That as a result of the aforesaid illegal conduct on the part of the members of the district election boards in said districts, your petitioner challenges the entire vote cast in the said districts, to wit: 221,708, of which the said candi-

date, A. Harry Moore, was credited with 168,699 and of which the petitioner, Lester H. Clee, was credited with 49,130.

" 'B.'—Your petitioner further shows and alleges that as a result of the aforesaid fraudulent and illegal conduct on the part of the members of the district boards of election in the districts, wards and municipalities heretofore mentioned in Schedule 'A,' there were received by the various election boards in the aforesaid districts, votes from illegal voters who were not qualified under the provisions of the General Election Law, to vote in said election. Such unqualified and illegal voters were permitted by the aforesaid election boards, to vote on names other than their own, which names were the names of theretofore registered persons; the names of the said illegal voters, and the names under which they voted are unknown to the petitioner at this time, but such names and in what specific instances such illegal and unqualified voters were permitted to vote, can be readily ascertained and determined by a comparison of the signatures contained in the poll books used in the said districts with the signatures in the duplicate signature copy registers used in the said respective election districts at said General election. The said poll books and signature copy registers are now in the custody and possession of Charles F. Stoebling, Commissioner of Registration of Hudson County.

"Your petitioner further shows that he has, through his representative, made several applications to the said Charles F. Stoebling, as said Commissioner of Registration, for the production of said poll books and signature copy registers and for permission to make the said necessary comparison, but the said Charles F. Stoebling has refused to permit petitioner or his representative so to do, except in one instance when your petitioner's representative, Clayton Freeman, Chairman of the Republican State Committee, did visit the office of the said Charles F. Stoebling, on Saturday, November 13th, 1937; that the said Clayton Freeman did request production of poll books and duplicate signature copy registers of a certain district and was permitted to make a comparison of

some of the names in the said poll books with the signatures of voters in the said duplicate copy registers in that particular district. That he did forthwith discover a number of forgeries written in the poll books, but before your petitioner's representative was afforded an opportunity to complete the district and make a notation of the particular forgeries, the books were taken from him at the direction of the said Charles F. Stoebling, and no further examination of this kind was permitted.

"Your petitioner further alleges that the said poll books and signature copy registers will show that the said illegal and unqualified voters who were permitted to cast ballots by the members of the district election boards in all of the districts particularly enumerated and set forth in said schedule 'A' amount to at least, 55,000 votes, which were cast for the candidate, A. Harry Moore.

" 'C.'—Your petitioner further shows and alleges, that in the election districts, wards and municipalities particularly set forth in aforesaid schedule 'A,' that the Superintendent of Elections of Hudson County, did, in compliance with paragraph 415, section 9, of an Act to Regulate Elections (Revision of 1930), with the amendments thereto and the supplements thereof, deliver to said election boards for use at the said General Election, a challenge list for each of the said election districts, containing the names, alphabetically arranged and addresses of all persons who by reason of death, removal, conviction of crime or otherwise, had lost the right to register and vote from the addresses within such election districts from which they were registered at the last preceding election and that all of the aforesaid district election boards in the election districts enumerated in said schedule 'A,' violated the provisions of said paragraph 415, section 9 of the said election Act in that they did allow persons whose names appeared on the said challenge list to vote, without first obtaining from said persons, an affidavit on the blanks supplied for that purpose by said Superintendent of Elections to said election district boards, which affidavits, in compliance with paragraph 415, section 9 of said General Election

Act, should have been obtained and which affidavits should have set forth the place of residence of the alleged voters, the fact that said voters actually resided at the addresses therein, enumerating the length of time of such residence, also the facts necessary to qualify said voters as voters under the constitution of this State; that the members of the said election district boards herein enumerated, did, in other divers ways, wholly ignore the said challenge list aforementioned.

"That as a result thereof, there were cast in the aforesaid election districts, wards and municipalities. enumerated in schedule 'A,' many illegal votes which were cast for the candidate A. Harry Moore. Your petitioner further charges that there were other illegal voters permitted to vote on names appearing on said challenge list, the names of such persons are unknown to your petitioner and can only be ascertained by a comparison of the signatures as contained in the poll books used in said election districts with the signature copy registers used in the said districts at the said General Election.

" 'D.'—Your petitioner further shows and alleges that the members of the district election boards in the districts, wards and municipalities in Hudson County, more particularly set forth in schedule 'A' hereto annexed and made a part hereof, did violate paragraph 198, section 33, of the aforesaid election Act: in that, for the purpose of intimidation, they did, fraudulently permit, condone, encourage and compel voters in their said election districts to receive and be subjected to assistance in the marking of their ballots; that said election boards did fail to have said voters declare under oath that they came within the provision of the aforesaid paragraph 198, section 33, of the said election Act; in that they did fail to enter in the poll books in their respective districts in the form of an oath, in each instance, of the assistance given, as required by said paragraph 198, section 33 of the said Election Act, containing the voter's number in each case where such assistance was given as aforesaid. That said illegal acts were fraudulently committed by the said members of the district election boards for the further purpose of compelling said voters to vote for the said A. Harry Moore,

and to reveal to the members of said election board, how said voters' ballots were marked, in violation of the General Election Act of this State.

"That the members of the said district election boards did further fraudulently violate the provisions of the aforesaid paragraph 198, section 33, and other sections of the Election Act, by permitting unauthorized persons to enter the voting booths to mark the ballots of voters. That the said voters did submit to said violations in order to reveal their having voted in accordance with the dictates of the Democratic Organization of Hudson County.

"Petitioner further shows and alleges that an examination of the ballots cast in the said districts will reveal that hundreds of ballots in each of the said districts have been marked with the same handwriting, and a further examination of the poll books in said districts will fail to disclose the affidavits of assistance filled out by the election boards as required by the aforesaid paragraph 198, section 33, of the said Election act. That as a result of the said wholesale violations of the said paragraph of the said Election Act, a total of at least 48,000 illegal votes were permitted to be cast, sufficient to challenge the election aforesaid.

" 'E.'—Your petitioner further shows and alleges that the district election boards in the districts, wards and municipalities, particularly set forth in schedule 'A,' hereto annexed, did, for the purpose of permitting the intimidation and coercion of legal voters and to assist in the creating of confusion in order to facilitate the casting of votes by illegal voters, permit the polling places to be crowded and cluttered up by persons without any authority, to be in said polling places within 100 feet thereof and did permit the display of advertising literature, campaign cards, buttons and pictures of the said A. Harry Moore, within the said polling places and within 100 feet thereof and did furthermore, permit persons to electioneer for votes for the said A. Harry Moore, within the polling places and within 100 feet thereof."

These will be analyzed and discussed in the order in which they are stated.

A.

This charge is that the election officers in the 519 election districts, listed in the schedule annexed to the petition, of Hudson county did not perform a duty imposed upon them by statute, *i. e.,* they failed to compare the signature made by the voter in the poll book with the signature of the voter in the permanent registration book, and thus ascertain whether the two signatures were the same or similar, as required by paragraph 178, section 13 of the statute, *supra,* and the petitioner says that as a result thereof "your petitioner challenges the entire vote cast in the said districts, to wit, 221,708 * * *." In other words, the charge is that since the election officers (assuming the truth of the charge) failed in a directory duty, each and every of the more than two hundred thousand votes cast is to be rejected as void so that the result is thereby challenged. It is not asserted, *under this charge,* that a single illegal vote was received and yet, if I understand the petition correctly, it does mean that each and every vote in those five hundred and nineteen districts is to be invalidated.

The implication that the two thousand and seventy-six election officers in charge of five hundred and nineteen election districts in this county, sworn to perform their duties, selected in equal number by the respective political parties, failed utterly in even a single instance to compare signatures, as required by law, imposes a strain upon one's credulity. But even if this be true, their failure to perform a directory duty cannot invalidate the result of the election.

That such duties are directory is settled by the case of *Burrough* v. *Branning* (at *p.* 115), *supra,* and that determination has never been challenged. This case, and others to which reference will be made, settles this and other points now under consideration. "It is a principle of *universal* application that an irregularity which does not deprive a legal voter of his vote [not accompanied with fraud by the party seeking the benefit thereof] will not vitiate the election. The

omission by election officers to discharge some duty merely directory will not set aside the return. * * * There are cases where the judges of election have been guilty of acts which render them liable to indictment, and yet [in the absence of fraud by the party who claimed the benefit from the result] the election was held valid. If this be so, surely the will of the people is to be given effect, in the absence of fraud, if only irregularly expressed. Negligence or mistake in the performance of duty by election officers will not be allowed to stand in the way so as to defeat the expression of the popular will."

In the Burrough case the irregularity complained of was the failure of the election officers to set off Haddon township into two election districts, as required by law, there being more than six hundred voters in the township.

It is not even suggested, much less charged in this specification, that the incumbent was in any way directly or indirectly responsible for the failure of the election officers to compare signatures. As a matter of fact, at the oral argument of this motion, it was expressly admitted by counsel for the contestant that he had no thought of intimating that the incumbent was in any way responsible for the alleged derelictions of which complaint is made.

In the case of *Lehlbach* v. *Haynes, supra,* one of the charges in the petition was that in two election districts a person, without being legally appointed and sworn, acted as a member of the election board and that in certain districts the poll books were not filed according to law. Mr. Justice Dixon, in writing the opinion for the Supreme Court, said, as to this, "it does not appear that these irregularities had any effect upon the voting, the counting, or the returns and, consequently, for present purposes, they are immaterial." See, also, *Hackett* v. *Mayhew,* 62 *N. J. L.* 481.

Nor does the allegation that this dereliction on the part of the district election boards was fraudulently done, in violation of the statute, add anything to the merit of the charge from the standpoint of the pleading.

Counsel for the contestant says that it is no longer neces-

sary to plead facts "and the particular circumstances of the case," as was the requirement under the election statute as formerly written. (See Revision 1898; 2 *Comp. Stat., p.* 2128, § 66, as contrasted with chapter 349, *Pamph. L.* 1920, *p.* 782, § 4.) We cannot agree with this contention, in so far as the charge under this point is concerned.

Fraud is a conclusion of law which is based upon facts. This is elementary. It may not be charged in general terms with any efficacy. The facts relied upon to constitute fraud must be stated, and this is an imperative requirement. The addition of the word "fraudulent" to an allegation, otherwise insufficient on its face, will not make out a case under the statute. Construing the provisions of subdivision 1 paragraph 355, section 1 of the statute, in the most liberal manner, it is clear that the fraud required to be pleaded to initiate a contest under this sub-division must bear such relation to the result of the election as to challenge it, *i. e.,* to throw the result into doubt as a statement of the true and accurate vote or will of the people.

Now there is no relationship whatever between the failure to compare signatures and the result of the election as declared. The petition, under this section of the statute, must show that the irregularities or fraud complained of produced a result so different from that which would have been declared in their absence, as to lead the court to conclude, *prima facie,* that on account of these irregularities the result is legitimately challenged. Obviously, the present change is insufficient under the statute.

### B.

Under this charge the contestant says votes were received from illegal voters who voted on names other than their own, which names are unknown to the contestant, but which can be ascertained by a comparison of the poll book signatures with those in the copy registers; that a representative of the contestant, Mr. Freeman, in one instance, made comparisons of signatures from the poll book and copy register of a cer-

tain district (which is not identified) and discovered "a number of forgeries." This allegation, of doubtful competency, is made the basis for the statement that 55,000 illegal votes "were cast for the candidate, A. Harry Moore."

Now the statute deals with the situation where the charge is illegal voting and in paragraph 356, section 2, this is the legislative language: "When the reception of illegal or the rejection of legal voters is alleged as a cause of contest, the names of the persons who so voted, or whose votes were rejected, with the election district where they voted, or offered to vote, shall be set forth in the petition, if known." Manifestly, the contestant does not know the names of such persons. It is so stated in the petition.

The statutory provision regarding the charge of illegal voting is the same to-day as it was under the act of 1876 (*P. L.* 1876, *ch.* 124, *p.* 198), and our courts have passed upon it and the indispensable requirements that the contestant must show in order to state a case under it. In *Lehlbach* v. *Haynes, supra,* the court was dealing with ballots charged to have been unlawfully rejected, a question similar in principle to that here presented. The charge was that votes were rejected by the election board and that many of them cast for the contestant were wrongfully rejected. Mr. Justice Dixon said: "This allegation is too vague * * *. Even if the conjecture, that many [ballots] cast for the contestant were wrongfully rejected be taken as true, the petition should state in what districts such rejections occurred and how many in each district so that the incumbent might *prepare for his defense* and the court might see what influence the counting of these rejected ballots would have towards changing the result. It does not excuse the vagueness of this allegation to say that the petitioners have no more definite information for if their information be of any value it must indicate the districts in which the ballots wrongfully rejected were cast. The petition also alleges that several hundred ballots cast and counted for Joseph E. Haynes were not in conformity with law. This allegation is open to objection similar to those affecting the preceding one."

In dealing with a similar situation, Judge Parker, in the case of *Burrough* v. *Branning, supra* (at *p.* 114), after pointing out that the pleader did not state the names of the persons who voted illegally, nor a fact tending to identify one such person in a single voting district, said, "It is manifest that the answer in this regard is clearly in antagonism with the statute." In that case, which has been followed ever since, the court clearly indicated that it is the duty of a contestant, alleging the reception of illegal votes, or the rejection of legal votes, to make some effort at identification by way of description or otherwise and to indicate in what districts such illegal votes were accepted or legal votes rejected.

In the charge before us we have only the bare statement that fifty-five thousand votes were illegally received. No effort is made to identify a single one of such voters out of the eight municipalities in which more than two hundred thousand votes were cast.

A close reading of this charge further reveals its inconsistency. In the closing paragraph the contestant alleges that "the poll books and signature copy registers *will show*" that fifty-five thousand illegal votes were cast for the incumbent. In the preceding paragraph the fact statement is that the representative of the contestant (Mr. Freeman) examined and compared the signatures in the books affecting one district where "a number of forgeries" was discovered. From this fact premise, how the conclusion that there were fifty-five thousand illegal votes cast can be supported, in this pleading, is beyond comprehension. As the matter stands, the conclusion is inescapable that the contestant, in verifying the petition, had no knowledge or information concerning the books affecting the 518 election districts which Mr. Freeman did *not* examine and, consequently, had no legitimate belief as to what such districts would show.

Of course, it is palpable, even assuming illegal votes were cast, that no one can truthfully say for whom they were cast.

I again advert to the words of the opinion, upon which it is difficult to improve, in dealing with an identical situation in the case of *Lehlbach* v. *Haynes, supra,* "the presumption

is with the incumbent, and we cannot assume, without evidence against that presumption, that the illegal ballots were for him rather than his opponents." And again, the language in *Groth* v. *Schlemm, supra* (at *p.* 436), "* * * Mere suspicion does not establish the legality of the election of the petitioner or the defeat of the incumbent."

We must not lose sight of the fact that it is the duty of the court to see to it that the petitioner states a cause of action under the law before setting in motion the machinery for trying the contest. All of the cases recognize that the pleading must be sufficient at least to enable the incumbent to prepare his defense to the charges set forth. In the case of *Lippincott* v. *Felton*, 61 *N. J. L.* 291, Chief Justice Magie, on appeal of the judgment to the Supreme Court, said, "The purpose" (of the petition) "was not only to apprise the incumbent of the grounds of the contest but to enable him to prepare and meet the specific charges by evidence." Manifestly, the present subdivision of the petition is so indefinite and vague that it would be impossible to prepare a defense to it.

For these fundamental reasons, my conclusion is that no ground for contest is stated under this heading.

## C.

The allegations under this heading charge that the superintendent of elections of Hudson county delivered a challenge list to the several district boards with the names and addresses of persons whom he had determined had no right to register and vote and that the election district boards did, none the less, permit the persons named to vote without obtaining an affidavit on blanks supplied by the superintendent of elections (paragraph 415, section 9) and that the five hundred and nineteen election boards wholly ignored the challenge list and that as a result thereof "many illegal votes were cast for the candidate, A. Harry Moore."

Much of what has been said regarding the preceding specifications of the petition is applicable to this charge. It is vague and meaningless. Furthermore, the violation of a

directory duty by the several boards will not invalidate the election. *Burrough* v. *Branning, supra;* there is no presumption that the votes so received were cast for the incumbent rather than the contestant (*Lehlbach* v. *Haynes, supra*) ; and, finally, there is no allegation that the votes so received would change the result, nor are facts stated from which it might reasonably be concluded that because of such omission of duty on the part of the several election boards the result of the election is challenged or would be changed. These allegations are therefore insufficient.

### D.

The allegations of this charge are that all of the election officers in the five hundred and nineteen districts violated paragraph 198, section 133 of the statute, *supra,* in that they permitted and compelled voters to receive and be subject to assistance in the marking of the ballot; that they failed to have the voters declare, under oath, that they needed assistance; further, that the election officers in the said five hundred and nineteen districts permitted "unauthorized persons to enter the booths to mark the ballots of voters;" and, further, that the ballots, if examined, will reveal that "hundreds of ballots in each of the said districts have been marked with the same handwriting," and that there is not in the poll books, in cases where a voter requires assistance, an affidavit that such assistance was required, contrary to the said paragraph 198, section 33 of the statute, as a result of which it is said that forty-eight thousand illegal votes were permitted to be cast.

As to these, all that has been said under the discussion of subdivision "B" applies with equal force to such portions of this specification as has to do with the reception of alleged illegal votes. No district is pointed out where any particular number of such votes is said to have been received, but merely the arbitrary and indefinite figure of "hundreds of ballots" is stated. The names of the persons who so voted are not given, nor is it stated that the names are unknown. There

must be a reasonable identification of such voters. *Burrough* v. *Branning, supra; Lehlbach* v. *Haynes, supra;* paragraph 356, section 2 of the statute.

The failure of the election district boards to require affidavits of those who needed assistance in marking their ballots does not invalidate those ballots and is not a cause for contest, but a procedural neglect punishable, under the statute, by removal, fine or imprisonment, according to the circumstances (paragraphs 455, section 23, and 480, section 48; see generally article 32). Because of this alleged delinquency on the part of the district election boards, it is not charged that a single person who voted for the incumbent under these circumstances would have voted for the contestant. The charge that unauthorized persons participated in the discharge of the duties of the election boards is no ground for voiding an election. *Lehlbach* v. *Haynes, supra.* Again, it is necessary to state, under the statute (paragraph 356, section 2), the places where, and by whom, and to what extent illegal votes were cast.

Finally, to summarize, it is not asserted that the voter did not intend to vote as he finally did or that he had in mind voting for some candidate other than the one for whom he cast his ballot. In the case of *Lehlbach* v. *Haynes, supra,* the charge that there was "an organized and successful scheme of colonization and personation of voters in favor of the election of Joseph E. Haynes" and that there were "large irregularities and illegal voting," and that there were "frauds" in certain sections, were rejected as too vague. This charge is likewise too vague; it lacks particularity and is not specific enough to inform the incumbent in order that he might prepare his defense. If, as the petition says, there were, in this manner, forty-eight thousand illegal votes cast, for whom were they cast? And even though the particulars attending their casting were irregular or illegal, there is nothing in the election statute that would permit any tribunal to declare such votes invalid since it is not claimed that the persons in question were not legally entitled to vote or that such ballots were in any way invalidated. This charge is, for these reasons, likewise insufficient.

E.

Under this heading it is charged that the election officers in the five hundred and nineteen districts aforesaid permitted the polling places to be crowded, cluttered up by persons who had no authority to be present, and that such persons were permitted to be within one hundred feet of the polling places, and that the election officers permitted "the display of advertising literature, campaign cards, buttons and pictures of A. Harry Moore," &c., and, further, permitted persons to electioneer for votes for the incumbent within the polling places, and within one hundred feet thereof.

This charge really merits no comment. Assuming the truth of these allegations, they had nothing to do with the result of the election, and it is not asserted that they had any such effect. Irregularities on the part of election boards having no effect upon the voting, &c., will never vitiate an election. *Burrough* v. *Branning, supra; Lehlbach* v. *Haynes, supra; Hackel* v. *Mayhew supra.* This charge is, therefore, not sufficient to initiate a contest under the statute.

These charges, analyzed, considered and discussed (perhaps at too great length), fail individually or collectively to state a case within the statute and, consequently, are ineffectual to start up the legal machinery for the contest.

In cases of this sort, it is an indispensable requirement that the petition make out a *prima facie* case. How such case is to be made out is definitely settled by the statute under which we are proceeding and that statute, by all the cases on the subject, must, *in this respect,* be strictly followed. *Darling* v. *Murphy,* 70 *N. J. L.* 435; *Wadsworth* v. *Harrison, supra.*

Tested by the standard of common sense or principles of justice, can it be said that the legislature intended that every elected official might be put to a contest together with the expense and vexation which necessarily accompany it, merely because a petition is filed asking for a contest and stating, generally, the broad grounds of the statute, without detail

sufficient to frame an issue against which the incumbent might prepare his defense. I do not think so. It is the duty of the court to uphold an election unless it clearly appears that it was illegal. *Love* v. *Freeholders, &c.*, 35 *N. J. L.* 269, 277; public policy so ordains. *Cleary* v. *Kendall, supra.*

Counsel for the contestant, in his brief, does not defend the sufficiency of the petition except to say that it does allege "several different overt acts of malconduct and fraud on the part of the members of the district boards, which are alleged to be sufficient to challenge the result of the election;" and, further, that the statute should be liberally construed, citing *Burrough* v. *Branning, supra.* It is true that the statute should be liberally construed, but such construction is limited to cases "where causes of contest recognized by the act are presented in specific form in a petition duly verified." Commenting upon the Burrough's case, Chief Justice Depue, in the case of the *Register of Essex County, supra,* said, "I quite agree with Judge Parker that the statute should be liberally construed, but that the constructions should not go so far as to confer a special statutory jurisdiction which the legislature does not confer."

This petition must be judged on its face as any other pleading. The omnibus charge of fraud in each of the subdivisions of the petition bestows upon it no particular efficacy in the absence of those elements mentioned above, which would permit the court to legally conclude that the alleged fraud is sufficient to challenge or, in the case of the charge involving the reception of the illegal votes, to change the result. A case is not pleaded within the requirements of the statute.

The maxim *quod non apparet non est* applies to the situation before us.

The petition will be dismissed, with costs.