FREDERICK P. RICHARDSON, CONTESTANT-RESPONDENT,
v. THOMAS G. RADICS, INCUMBENT-APPELLANT.

Argued January 19, 1944—Decided March 16, 1944.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and COLIE.

For the appellant, *Paul W. Ewing, John E. Toolan* and *Edmond A. Hayes.*

For the respondent, *Frederick F. Richardson, pro se,* and *Walter C. Sedam.*

The opinion of the court was delivered by

BODINE, J. In May of last year there was an election held for five City Commissioners to serve in the City of New Brunswick pursuant to *R. S.* 40:75–2. Thomas J. Radics, the appellant, received 4,393 votes and the contestant Richardson—respondent here—4,384. Radics qualified. The result of the election was changed when the Circuit Court, on a statutory contested election proceeding, rejected 241 ballots of men in the military service.

The County Board of Elections in examining the envelopes containing the ballots posted, according to the provisions of

*R. S.* 19:54–25, *et seq.,* rejected three because their names did not appear upon the Adjutant-General's list. The remaining 241 were counted. It appears that of this number 63 were not registered and 178 were. The Circuit Court found that the unregistered service men could not vote, and since the ballots of the registered voters could not be segregated from the whole, all must be rejected in compliance with the principle laid down in *Burkett* v. *Francesconi,* 127 *N. J. L.* 541, but that case is not applicable to the present situation.

*R. S.* 19:54–27 declares that the purpose of the act is to secure for those qualified voters who were in the armed forces of the United States the right to vote in any election held in this state or any subdivision thereof. Provision is made for official mailing to those appearing upon the list of qualified voters certified by the Adjutant-General of a ballot with instruction as to the method of voting and two envelopes; the outer to contain a certificate by the voter as to his qualification, the other to contain the ballot. In this manner a secret ballot was secured.

*R. S.* 19:54–35 is as follows: "The county boards of elections shall promptly after receiving any ballot make such investigation as may be necessary to ascertain whether or not the persons whose names appear on the outside of the outer envelopes are legally qualified voters actually entitled to vote at such election. Should any dispute arise as to how any ballot shall be counted the county board shall refer the matter to the court of common pleas for determination." The investigation is not whether the voter is registered but whether he is qualified. That qualification, under article II of the constitution, is a matter of citizenship, age and requisite residence only; nothing is said as to registration.

In the county board a dispute arose as to the envelopes containing ballots of unregistered voters. The learned judge of the Court of Common Pleas had ordered them counted and they were counted. This action was, in our view, proper.

Those in the armed forces of the United States seldom could register unless they had previously done so. Hence,

the provision in the act requiring the ballots to be sent to those whose names and addresses appeared upon the Adjutant-General's list and the requirement as to mailing and the certification by the voter. If it appeared that the name was upon the list and the voter's certificate showed the qualification in compliance with *R. S.* 19:54–31 the ballots were properly counted by the board of elections.

The vote of service men is guaranteed by article II of the constitution and statutes must be construed liberally to implement the fundamental law. The decision below rests upon a reference to electors in commission government elections, *R. S.* 40:70–2 "as citizens of the municipality as were registered as voters at the last general election." Such provision, however, falls because of the all inclusive provision providing for the votes of those in the armed forces.

The act, *R. S.* 40:75–12, refers to the official registry list and the General Election Law. However, controlling the present situation we think is the constitution and the ballots pursuant to the implementing act *R. S.* 19:54. *R. S.* 40:75–13 was repealed, *Pamph. L.* 1942, *p.* 48, but that does not change the situation since the charter right of service men to vote was preserved. The legislature having enacted a complete plan to secure the vote of the qualified persons in the armed forces, there was no point in continuing a special provision as to this vote in municipal elections. *R. S.* 40:75–13 was repealed in order to make the provision of law for voting in war times uniform. *Cum. Supp. R. S.* 1942, *Statement, p.* 619.

If the certificates on the outer envelopes showed the qualifications specified, as the County Board must have found, then the ballots by those in the armed forces whose names appeared upon the Adjutant-General's list should have been counted, even though the voters were not registered. Any other result would disqualify those in the armed services who came of age after the last general election and had no opportunity to register. These young voters should not be disqualified by a construction which does not conform with the express mandate of the constitution and the legislature. In

our view, this aim and purpose is plainly stated in the statute *R. S.* 19:54–27.

The Adjutant-General's list and the mailing of the ballots by the county clerk, it was stipulated, complied in all respects with the law. To restrict the vote of service men to those who were registered voters would defeat the legislative purpose to secure the vote of all those in the armed forces, who were qualified in accordance with *R. S.* 19:54–32, which provides for removing of the names of those in the armed forces to whom ballots had been sent from the permanent registration binders. If this had been done, the names of none of those to whom ballots were mailed would appear except in the "military file," and would not appear upon the permanent registration binders. The legislature, in providing for the so-called soldier vote, made the Adjutant-General's list, the mailing by the county clerk to those whose names appeared thereon, and the certificate of qualification by the voter witnessed by the commanding officer the equivalent of registration.

The statutory direction for the removal of names from the permanent registration binders to a military file recognized that there would be those, eligible to vote, whose names were not registered. The names of servicemen are removed from the permanent binders to the military file, *if said names appear therein.* This italicized phrase is without meaning unless by it the legislature intended that ballots should go to those in our armed forces, not registered but otherwise qualified to vote. It negatives any limitation to those already registered.

The judgment is reversed, with costs.