[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 497 
Plaintiffs, alleging that they are legal and qualified voters of the City of Asbury Park, filed a complaint challenging the result of the election of councilmen held in that municipality on May 10, 1949.
Defendants (incumbents) move to dismiss the complaint on the grounds, as orally supplemented, that:
(1) the complaint was not filed within time;
(2) summons was not issued or served; and
(3) the complaint fails to set forth a basis for relief.
These issues will be considered in the order stated. *Page 498 
 I. R.S. 19:29-3 provides that the petition (now complaint) of contest shall be filed not later than 30 days after the election and "may be filed within ten days after the result of any recount has been determined or announced." The complaint was filed June 21, 1949, more than 30 days after the election. The issue is whether it was filed within 10 days after the determination or announcement of the result of the recount proceedings.
On May 16, 1949, an unsuccessful candidate petitioned the Monmouth County Court for a recount under R.S. 19:28-1 and on that day an order was made directing the County Board of Elections of Monmouth County "publicly to recount the votes cast in the Twelve Districts of the Two Wards of the City of Asbury Park." It appears from the affidavits filed that on June 10, 1949, after the recount of the vote in eight of the twelve districts had been completed, the moving party advised the County Board of Elections that he desired to abandon the remainder of the recount, and on that date the County Board of Elections announced that the recount had been abandoned. The recount of the remaining four districts never took place.
On June 11, 1949, notice was given of an application to the Monmouth County Court for an order dismissing the recount proceedings. An order to that effect was signed on June 13, 1949. The present complaint was filed on June 21, 1949.
It is contended that the mentioned action of the Board on June 10, 1949, constituted a determination and announcement of the result of the recount and hence the present complaint was not filed within the statutory 10 day period of limitation.
The words "determined or announced" in R.S. 19:29-3, quoted above, appear to relate to the determination or announcement of the Board of Elections, at least where the recount confirms the original result. The alleged determination of the Board of Elections on June 10th was not, however, a determination of the result of the recount directed to be *Page 499 
made. The order of the Monmouth County Court directed a recount of the twelve districts. The Board of Elections was not authorized to do less. The announced abandonment by the contestant did not operate to amend or terminate the order directing the performance of a specified duty. Cf. 29 C.J.S.,"Elections," § 299, p. 422.
Undoubtedly, in such situations a Board of Elections may properly suspend its activity to permit an appropriate application to the court for an order relieving the Board of the prior directive. However, until the court does terminate the proceedings, it cannot be said in that situation there has been any "result" of the recount. Hence, in the present situation, the earliest event which can be said to constitute a determination of the result of the recount was the order of June 13, 1949. Measured by that event, the present complaint was filed within time.
As a subsidiary point, it is argued that the complaint was out of time as to four of the councilmen declared elected, because, it is claimed, the recount proceedings were directed only against the candidate who finished fifth in the election. The petition for the recount prayed for a recount of the entire election and the order for recount is of that breadth. Indeed, it is doubtful that, where five candidates for the same office are to be elected in a single election, a recount could properly be limited to the result as to less than all of the candidates.
 II.
It is contended that the action should be dismissed because a summons was not issued within five days after the complaint was filed, in accordance with Rule 3:41-2.
Rule 3:41-2 does not apply to the present proceedings. R.S.
19:29-4 provides:
"The court shall appoint a suitable time for hearing such complaint, not more than thirty nor less than fifteen days after the filing of the petition, and the contestant shall cause a notice of such hearing, with a copy of the contestant's petition, to be served on the incumbent at least ten days before the day set for trial." *Page 500 
The process is thus specified. It is not disputed that the statutory provision was fully met. If Rule 3:79 is deemed to apply, it is clear that the notice of hearing served with the complaint pursuant to the order of this court was the substantial equivalent of the order to show cause contemplated by Rule
3:79-2. The defendants were fully informed of the relief sought and of the time and place for hearing. There is no conceivable element of prejudice to the defendants.
 III.
The remaining ground of the motion is that the complaint fails to set forth facts entitling the plaintiffs to relief.
The grounds of contest of an election are set forth in R.S.
19:29-1. In part, the complaint is couched in the statutory language. In view of the public interest in the subject matter, it is desirable that the controversy be determined on the merits and not upon artistry in pleading. In view of the broad power of amendment provided in R.S. 19:29-5, the obvious objective of the statute that the litigation be expedited is better served by getting to the ultimate substance of the controversy and determining its sufficiency. Defendants, of course, are entitled to a statement of charges sufficiently explicit to permit preparation for trial. A pretrial conference was accordingly held on July 12, 1949, to achieve a greater degree of concreteness.
At the pretrial conference, it developed that the plaintiffs' challenge relates only to "improper registration" and those improprieties orally specified were (1) that voters were registered at places other than the official places for registration described in R.S. 19:31-6 and 7, and (2) the municipal clerk failed to transmit the registration forms to the County Board of Elections daily as required by R.S. 19:31-7 and that in fact some were so transmitted after March 31, 1949, the fortieth day before the election. It is not contended, however, that the voters so registered lacked the qualifications for voting, and with respect to the second alleged impropriety, it is not claimed that any voter was in fact registered within the 40 days period preceding the election. *Page 501 
Pursuant to the direction of this court, briefs were filed to the end that a determination might be made of the issues considered in this memorandum in advance of the trial date.
Elections are public events of ultimate importance. The expression of popular will thus evidenced should be sustained unless compelling circumstances impugn the correctness of the result.
Obviously not every infraction of the election laws will invalidate the contest. There is a settled distinction between violations of directory, as distinguished from mandatory, provisions of the law. As here used the characterization of a provision as "directory" is not intended to suggest that compliance therewith is discretionary with the officer concerned, but rather to indicate that the Legislature did not intend that a violation thereof shall invalidate the election. Officials charged with enforcing election laws are bound to comply with the provisions, whether directory or mandatory in nature, and for their infraction are amenable in accordance with law. And their timely compliance with directory provisions may be judicially compelled. But the election will not be upset where the provision violated is directory in quality. In re Clee, 119 N.J.L. 310, 196 A. 476 (Sup. Ct. 1938); 29 C.J.S., "Elections," § 214,p. 307. R.S. 19:29-1, in setting forth the grounds of contest, nowhere suggests that every violation of the election law will suffice.
The basic qualifications for voting are prescribed by our Constitution. Article II, paragraph 3; Richardson v. Radics,131 N.J.L. 406, 37 A.2d 293 (Sup. Ct. 1944). The Legislature may nevertheless regulate the exercise of the right to vote to insure an orderly contest and the integrity of the outcome. Laws respecting registration are of such character. They are primarily designed to provide for the establishment of the existence of the voter's qualifications sufficiently in advance of the election to prevent illegal voting. Their purpose, however, is subsidiary to the primary objective of a full expression of popular will at the polls.
It is unnecessary to consider whether a total failure to comply with the laws respecting registration constitutes a *Page 502 
ground of challenge to the result of an election or the effect of an irregularity in registration upon the right of the voter concerned to cast his ballot where his right is challenged at the polls. See 101 A.L.R. 657. The specified charges amount only to alleged irregularities in the details of the technique of the registration process and the proceedings brought are not to bar the casting of a ballot but rather to invalidate a concluded election.
We think it is clear that the alleged irregularities are insufficient, as a matter of law, to sustain the judgment sought. The qualifications of the voters thus registered are not challenged, nor is it claimed that the voters were in fact registered after the expiration of the time limitation for registration. The claim made in plaintiff's brief that the registration outside of the places officially designated for registration was designed for the registration of voters sympathetic to the incumbents does not change the stature of the basic charge in the absence of a claim that the voters so registered were not qualified to vote. As already stated we need not here consider whether the specific irregularities charged would have been sufficient to deprive the voter of his ballot if a challenge had been seasonably made. It is clear that such irregularities will not infect a concluded election. 29 C.J.S.,"Elections," § 51, p. 68. Cf. In re Clee, 119 N.J.L. 310, 196 A. 476 (Sup. Ct. 1938).
The provisions of R.S. 19:29-1 here sought to be invoked are:
"The nomination or election of any person to any public office or party position, or the approval of any public proposition, may be contested by the voters of this state or of any of its political sub-divisions affected thereby upon one or more of the following grounds:
"(a) Malconduct, fraud or corruption on the part of the members of any district board, or of any members of the board of county canvassers, sufficient to challenge the result;
 * * * * * * * *
"(e) When illegal votes have been received, or legal votes rejected at the polls sufficient to change the result."
Assuming that the conduct charged constitutes "malconduct" within subsection "a." nevertheless, for the reasons given *Page 503 
above, such conduct is not legally "sufficient to challenge the result."
With respect to subsection "e" of the statute, the issue is whether the alleged infractions of the law constitute the votes cast "illegal votes." It has been said that an unregistered voter is not a "legal voter" within the meaning of R.S. 40:62-15 relating to petitions for referendum on certain issues. PublicService, etc., Co. v. Camden, 13 N.J. Misc. 693, 180 A. 778 (Sup. Ct. 1935). On the other hand, it has been held that a qualified, but unregistered, voter is a "legal voter" within the meaning of R.S. 19:23-15 prescribing qualifications for candidacy for primary elections. In re Ray, 26 N.J. Misc. 56, 56 A.2d 761 (Circuit Ct. 1947). Doubtless, the meaning of such words may well vary in the light of the legislative object sought to be attained in the several provisions in which those words appear. However, as already stated, we are not here concerned with the question whether a total failure to register will render a vote illegal, but rather whether the alleged infirmities in the registration process have that fatal import. In resolving that issue, resort must be had to the basic principle already discussed, i.e., that infractions of directory provisions will not support a challenge to an election.
To expedite the preparation of counsel and to avoid the production of witnesses whose testimony will be rejected, counsel are hereby advised that at the trial evidence in support of alleged improprieties considered above will be excluded for the reasons stated. For the purpose of the record a proffer of that proof may be made without the production of witnesses.
At the pretrial conference the issue triable was described as "improper registration." The issue might, and perhaps should have been, further limited by a specification of all irregularities which are claimed to constitute improper registration. The evident latitude was permitted because counsel for plaintiffs felt unduly curbed in his preparation by the shortness of time. At the trial, however, plaintiffs will be required to make an opening statement as to all other acts or omissions, if any, which are claimed to constitute irregularities *Page 504 
in the registration process, and their legal sufficiency will then be determined. It must be kept in mind that the statute does not authorize this court to conduct a roving investigation but rather contemplates a trial of specific charges.
By letter dated July 13, 1949, counsel for plaintiffs requested a further adjournment which application was denied by telegram. More than two months have elapsed since the election. Public interest manifestly requires that election contests be promptly tried. R.S. 19:29-4 evidences the legislative will in these cases. *Page 505