227 N.J. Super. 339 (1988)
547 A.2d 344
IN RE CONTEST OF ELECTION OF SHELDON S. EVANS; PATRICIA C. WOLFINGTON; AND JOHN N. CARNUCCIO.
Superior Court of New Jersey, Law Division Burlington County.
Decided June 10, 1988.
*343 John E. Harrington for plaintiff (Schlesinger, Schlosser, Foy & Harrington, attorneys).
John M. Carbone for defendant (Carbone & Faasse, attorneys).
HAINES, A.J.S.C.
This suit challenges the election of Sheldon S. Evans to the Hainesport Township Committee on the ground that he lacked the required domicile in that municipality. The remaining defendants are charged with improperly assisting Evans in connection with his election. This opinion responds to pretrial motions. The matter has been resolved without trial.

A. Judge or Agent?

In Maple Shade General Election, 203 N.J. Super. 563 (Law Div. 1985), I said:
The Legislature exercises paramount control over election matters and the courts are bound by its enactments.
....
The present quest does not ignore that principle. It seeks only to fix the role of the court when it addresses election problems requiring judicial solutions, i.e., problems which have not been considered by the Legislature. It acknowledges the fact that some problems must be resolved by judges who sit, not as judges, but as agents of the Legislature, because the Legislature has said so. [at 576-77]
The defendants apparently read these statements as reflecting a conclusion that judges in election contests may act judicially *344 only when facing problems not considered by the Legislature, and that otherwise judges act as legislative agents, bound strictly by the language of the statutes. In the same case, however, I said:
There are very realistic reasons for reaching a conclusion that judges hearing election contests are authorized to act judicially: the exercise of judicial power represents the only way in which necessary decisions can be made as to the meaning of statutes and the structuring of appropriate relief when none is provided. [at 584]
It is my opinion today, that judges hearing election contests preside over them judicially whenever it is necessary to provide a statutory interpretation, to fill a statutory omission or to provide relief, on an equitable basis, when none has been provided by the Legislature. This conclusion does not abuse the conclusions reached in Maple Shade.

B. Timeliness

The defense contends that the contest petition was filed too late because it was filed more than 10 days after the Election Board announced the result of a recount of the votes cast in the instant election.
N.J.S.A. 19:29-3, insofar as this case is concerned, requires the petition to be filed "within 10 days after the result of any recount has been determined or announced." The statute does not define the words "determined or announced." A judicial interpretation is required.
The only case dealing with the questioned language is In Re Smock, 5 N.J. Super. 495 (Law Div. 1949). In Smock, after completion of a recount of some but not all of the election districts named in a recount order, the moving party withdrew his recount request and the County Board of Elections announced that it had been abandoned. It was argued that the Board's announcement was the announcement or determination to which the statute referred and that a contest petition filed more than 10 days thereafter came too late. The court, disagreeing, held that an incomplete recount proceeding could be *345 terminated only by court order since its original order required further proceedings. The date of the "announcement" was therefore the date the terminating order was signed and the contest petition was filed in time. In reaching this result the court said:
The words "determined or announced" in R.S. 19:29-3, quoted above, appear to relate to the determination or announcement of the Board of Elections, at least where the recount confirms the original result. [at 498]
The defendants seize upon the quoted language as determinative, making the within petition untimely.
The Smock court did not consider an announcement of the final result of a recount; it considered an announcement abandoning a recount. The quoted language is therefore dicta. Further, Smock, a Law Division case, is not binding on this court, which disagrees with the conclusion that the statutory language refers to "the determination or announcement of the Board of Elections."
N.J.S.A. 19:28-3 provides that a Superior Court judge "shall be authorized to order upon such terms as he deems proper a recount of the votes as he may determine, to be publicly made under his direction by the County Board." Good practice requires the recount order to provide for the act which constitutes the announcement or determination of the result since the statute provides that the recount is to be undertaken "under [the Judge's] direction." An Election Board's announcement is not made under the Judge's direction unless the recount order so provides. The present recount order did not so provide and no further order has been executed in these proceedings. Since the Election Board's announcement of the recount result was not made "under the direction" of the court, that result has never been "announced or determined" as required by the recount statute. Consequently, the within petition was filed within time.
The Burlington County Board of Elections, in accordance with its usual practice, has filed a certificate with the court setting forth the recount result. It is dated December 1, 1987, *346 and filed on or after that date. (The date of filing is not shown.) The within petition was filed on December 10, 1987, and therefore within at least ten days of the date of the filing of the Board's certificate. A well drawn order authorizing the recount could define the announcement of the result as the filing of the certificate.
A contrary decision, validating the oral announcement of an election board at the end of a recount, would have unfortunate consequences. Persons who are interested in a recount are not necessarily present when it takes place. N.J.S.A. 19:28-3 merely requires notice of the recount to be given to such parties "as the judge may direct." It does not require the presence of anyone at the recount. The persons who receive notice may well be different than the persons who file a contest petition. N.J.S.A. 19:29-2, permits that petition to be filed by a defeated candidate or by 15 voters. Thus, persons interested in contesting an election, after a recount, the public generally and the court, particularly for record purposes, need public documentation fixing a reliable date of the statutorily required announcement. The certificate filed by the Board of Elections would satisfy that requirement. The election statutes, however, do not so provide. Consequently, unless the election statutes are amended to define the words "determined or announced," only a court order can fix the necessary date.
(Note that N.J.S.A. 19:29-3 refers to a "petition protesting any nomination for public office" and requires filing "not later than 10 days after the primary election." (emphasis supplied) Nothing is said about the general election. However, the second paragraph of 19:29-3 refers to "such primary or other election" and the recount statute refers to "any election." N.J.S.A. 19:29-3, also permits a contest petition to be filed "within 10 days after the result of any recount, has been determined or announced." (emphasis supplied) That statute must be read as permitting the present general election challenge. An opposite conclusion would come as a great surprise *347 to most people interested in election matters; many contest proceedings have addressed general election issues.)
Counsel have raised the question of whether the within complaint should not be considered as one filed in lieu of a prerogative writ. If so, the defense argues that the cause of action is barred by R. 4:69-6 because it accrued when the contestants learned of the domicile question more than 45 days before the suit was filed. The issue is a red herring. A prerogative writ action is not appropriate here. The election statutes provide the correct procedural remedy. A judicially adopted 45 day rule cannot supplant a legislatively adopted 10 day rule, at least not when the latter rule is part of an entire legislative scheme covering elections. In the present case the cause of action may have accrued more than 45 days before the general election. If so, a prerogative writ proceeding would be barred unless the complaint was filed before the general election took place. That cannot have been intended. In Lebak v. Freck, 212 N.J. Super. 234 (Law Div. 1986), the use of a prerogative writ action was approved as a matter of necessity. The statutes did not provide a remedy. That is not the case with respect to an election contest.

C. Clear and Convincing?

The issue here is domicile. The challengers have the burden of going forward with evidence to sustain the claim that Evans was not domiciled in Hainesport Township as required by our election laws. Is this burden one which must be carried by clear and convincing evidence or only by a preponderance of the evidence?
The preponderance rule is applicable in the normal civil case. Evid.R. 1(4), Comment 5. Only two New Jersey courts have addressed the question in an election case. In Lepre v. Caputo, 131 N.J. Super. 118 (Law Div. 1974), the court held that the right to amend a nominating petition had to be proved by clear and convincing evidence. The court's concern was fraud, e.g., *348 that a candidate might procure signatures on a petition nominating him for one office and then, through an amendment procedure, change the petition to refer to another office. In Michaud v. Yeomans, 115 N.J. Super. 200 (Law Div. 1971), the court established a presumption that a university student was not domiciled at the university and required him to rebut that presumption by only a preponderance of the evidence.
The many cases dealing with standards of proof shed little light on the immediate problem. It is apparent, however, that the standard to be applied becomes more difficult as the significance of the issue increases. A criminal charge, for example, must be proved by the State beyond a reasonable doubt. In Michaud, the issue involved a student who attempted to register for voting purposes and was refused. The issue, as here, was domicile. Arguably, it was an issue fraught with consequences as serious as those considered in Lepre: the easy registration of thousands of college students who could change the balance of power in a community. A false claim of domicile is as fundamentally fraudulent as a false representation in a nominating petition. Both invite criminal penalties. Evans faces those penalties in the present suit. The claims against him are serious, too serious to be proved by the lowest standard of evidence. Clear and convincing proof is required. The conclusions of Michaud are rejected.

D. Waiver and Estoppel

The defense argues that the petitioners had knowledge of the domicile issue long before the general election and therefore their failure to challenge Evans' nomination until after that election constitutes a waiver or an estoppel.
The waiver theory is a doubtful one. "Waiver" occurs only when one with full knowledge of a right intentionally surrenders it by an act which is clear and decisive. West Jersey Title & Guaranty Co. v. Industrial Trust Co. et als, 27 N.J. 144, 152-153 (1958). Consideration is a normal requirement. *349 Id. No facts are offered, beyond knowledge and lapse of time, to show that 15 petitioners knowingly waived their right to contest the election. No one points to an unequivocal act or to consideration. N.J.S.A. 19:29-3 expressly authorizes the filing of a contest petition "10 days after the result of any recount has been determined or announced." The statute does not advance the filing deadline by reason of early knowledge of the basis for a contest. No waiver of the statutory right has therefore occurred.
Facially, assuming early pre-general election knowledge of the domicile claim, the elements of an estoppel are present. An estoppel arises when one who does or forebears to do an act induced by another's conduct reasonably relies thereon and changes his position. Summer Cottagers' Ass'n. of Cape May v. City of Cape May, 19 N.J. 493 (1955). The defendant candidates claim they proceeded with their election efforts on the assumption that no question existed as to their eligibility since it had not been challenged. They changed their position when they lost the opportunity to substitute eligible candidates in their place.
The estoppel theory, however, simply does not fit this election contest. The defendants cannot successfully claim reasonable reliance on the failure of the contestants to act earlier when they knew or should have known, that N.J.S.A. 19:29-3 gave those contestants the right to file their petition after the general election took place. The defendants are presumed to have known the law, especially, in their case, the election law.

E. The Candidates Other Than Evans

It is claimed that Evans' companion candidates must forfeit their offices because they participated in the filing of false election documents relating to his domicile.
N.J.S.A. 19:3-7 is one of two statutes in the election law dealing with the forfeiture of public office. It provides that if "any candidate for nomination for or election to any public *350 office ... shall file any false statement, the nomination or election of such candidate ... shall be null and void." Arguably, "any candidate" filing "any false statement" including the statement of another candidate, falls within the statute, thus subjecting all of the defendant candidates to the forfeiture of their offices. A strict construction may require this conclusion, but it should not be reached until a record has been made.
The second forfeiture statute is N.J.S.A. 19:34-46 which provides:
In addition to any penalties provided for violation of any of the provisions of this title, the court imposing such penalty may add thereto that such offender be thenceforth disfranchised as a voter and disqualified to hold any office of trust or profit within this state for such length of time as such court deems proper.
No limits to the exercise of discretion and no standards are provided. Questions therefore arise as to the validity of this law. Does it meet due process requirements? See State v. Reyes, 207 N.J. Super. 126, 135-136 (App.Div. 1986). The same concern arises with respect to N.J.S.A. 19:3-9 which among other things, bars forfeiture of office on a finding of "good faith" when that consequence "seems to the court or judge to be unjust."
Under the circumstances the claim that the other candidates must forfeit their offices is a doubtful proposition. It is a claim which cannot be addressed, however, until a trial record has been made.