934 A.2d 607

IN RE THE CONTEST OF THE NOVEMBER 8, 2005 GENERAL
ELECTION FOR THE OFFICE OF MAYOR OF THE
TOWNSHIP OF PARSIPPANY–TROY HILLS.

Argued May 2, 2007—Re-argued September
11, 2007—Decided November 8, 2007.

548

*Angelo J. Genova* argued the cause for appellant, *Mayor Michael M. Luther* (*Genova, Burns & Vernoia,* attorneys; *Celia S. Bosco, Peter J. Cammarano III* and *Michael J. Grohs,* on the briefs).

*John M. Carbone* argued the cause for respondent, *Rosemarie C. Agostini* (*Carbone and Faasse,* attorneys).

*Daniel W. O'Mullan,* Special County Counsel, submitted a letter in lieu of brief on behalf of respondent, Clerk of the County of *Morris, Joan Bramhall* (*Ronald Kevitz,* Morris County Counsel, attorney).

Justice HOENS delivered the opinion of the Court.

Free and fair elections are the foundation on which our democracy rests. The right to vote, and to have one's vote counted, is both cherished and fundamental to our way of life. We rely on our election laws and on the fair conduct of elections to ensure that the people may be heard through the ballot and that their will, as expressed through their votes, may be effectuated. At the same time, we can only be certain that the true will of the people has been expressed if we can be confident in the election process

itself. The right of a defeated candidate to contest the outcome of an election, while carefully circumscribed, is an important means to ensure that the true will of the people is indeed heard through the ballot box.

The dispute now before this Court requires us to interpret the meaning of a portion of our election laws governing a challenge to a municipal election by a losing candidate. Although there are ancient precedents that bear on our analysis, they are not in keeping with the changes that our Legislature has made to the election contest statute over the past century and a half. We therefore consider the meaning of our election law in an effort to discern what the statute requires the election contest petition to contain and to determine the appropriate test for legal sufficiency to be applied to an election contest petition in the face of a motion to dismiss.

I.

The November 8, 2005, election in the Township of Parsippany–Troy Hills offered the voters a choice from among several candidates for the post of mayor. After the results were tallied, Michael Luther was credited with a total of 7,110 votes, Rosemarie Agostini had a total of 7,069 votes, Roy Messmer had 320 votes, and Michael Spector had 199 votes. Luther, therefore, had forty-one votes more than Agostini, a difference of less than three-tenths of one percent of all of the votes that had been cast. Luther's total was based on 6,866 machine ballots, 239 absentee ballots, and 5 provisional ballots. Agostini's total was based on 6,818 machine ballots, 239 absentee ballots, and 12 provisional ballots.[1]

A.

Based on that initial count of the votes, on November 16, 2005, Agostini sought both a recount, *N.J.S.A.* 19:28–1, and a recheck,

---

[1] The record does not reflect the precise basis for the tallies of ballots attributed to the other two candidates.

*N.J.S.A.* 19:52–6, of the votes that supported those reported results. When the ballots were recounted, the tally of the absentee ballots had changed, with the result that Luther had received only 233 of those votes and Agostini had received 234, giving her a net gain of one vote and leaving Luther with a margin of victory of forty votes. The election result declaring Luther to be the winner of the mayoral contest was certified by the Morris County Clerk on November 22, 2005.

Faced with this outcome, on December 8, 2005, Agostini filed a verified petition to challenge the election. The body of that petition set forth several bases for her challenge as allowed by statute. *See N.J.S.A.* 19:29–1. In particular, Agostini asserted that there were persons who were entitled to vote whose ballots had been rejected. *See N.J.S.A.* 19:29–1(e). She contended that illegal votes had been permitted and counted, *ibid.*, including votes by persons who were not residents of the township or were unqualified to vote. She alleged that in certain polling places, the numbers of persons who entered and voted exceeded the number of voting authorities that had been issued. *See N.J.S.A.* 19:29–1(f).

Agostini also asserted that there were two kinds of irregularities among the absentee ballots, including allegations on information and belief that some voters had wrongful assistance or were subjected to intimidation and that there were absentee ballots that were "not applied for, handled, messengered, returned, marked or processed in accordance with the statute." *See also ibid.* Specifically, as it pertained to the absentee ballots, Agostini pointed out that although 501 absentee ballots had been approved for counting by the Board of Elections, a greater number, 507, had actually been counted on election night, and a different number, 506, had been tallied during the recount. Finally, Agostini asserted in general that the "election process and workers failed to follow, implement, and/or disregarded the statutory requirements and protections to ensure a fair election." *See also N.J.S.A.* 19:29–1(a). Her petition was accompanied by an attachment that speci-

fied a number of individual voters whom she alleged fell into one of the challenged categories that were set forth in the verified petition.

Within days of the filing of the petition, the Assignment Judge conducted a telephone conference with counsel for Agostini and Luther. He noted that the petition lacked specific information that would support the general allegations of fraud and corruption, and expressed concerns about whether the information in the petition sufficiently identified that there were votes cast for Luther that, if excluded, would give Agostini a victory. Having voiced those concerns, the court decided to give Agostini an opportunity to address what he perceived to be the petition's shortcomings. He therefore directed that an amended petition be filed. His December 13, 2005, order specified that: "[t]he amendment shall set forth the facts, circumstances and statutory basis regarding the deficiencies as alleged in the Petition, as amended, and attached exhibits[.]"

On December 20, 2005, Agostini filed her First Amended Verified [2] Petition. The substance of the allegations set forth in the amended petition itself was not different from her initial petition. However, the attachment to the petition was expanded to include a coded key that cross-referenced the ground for challenging the vote of each voter who had been identified and whose vote Agostini contended either had been counted illegally or had been improperly rejected. In addition, the attachments set forth further information concerning the improprieties that had been discovered among the absentee ballots.

In the attachment to the amended petition, Agostini identified a total of ten voters whose votes had been improperly rejected, forty-one votes that had been illegally received and counted, and four votes cast at machines in excess of the number of voting authorities issued. In addition, Agostini raised challenges to seventy-four of the absentee ballots that had been counted.

---

[2] Agostini did not separately verify the amended petition.

Among the absentee ballots, she identified ballots issued to individuals who were not residents of the district, improprieties in the completion of the certifications by the voter, irregularities in delivery of the ballots, missing certification flaps on the inner ballot envelopes, and absentee ballots with signatures of the voter that did not match the signature in the official register of voters.

## B.

Luther moved to dismiss the amended petition, asserting [3] that it failed to state a claim, because the pleading lacked specificity and "present[ed] nothing more than suspicion or conjecture to support its allegations." More particularly, Luther argued that in an election contest, the petition was required to serve the functions of not only identifying the basis for the challenge, but also of providing the putative winner of the election with enough information to permit him or her to prepare a defense. Pointing out that the amended petition was not verified, Luther urged that it also be rejected on that separate ground.

Moreover, Luther urged the court to conclude that an election contest petition should be subjected to a heightened pleading standard so as to discourage such contests which, he argued, were contrary to effectuating the will of the public as expressed in the election. Finally, Luther contended that the statutory reference to votes "sufficient to change the result" of the election, *see* *N.J.S.A.* 19:29–1(e), embodied a requirement that the pleading itself identify for which candidate each challenged vote had been cast in order to demonstrate that the outcome would have been different.

---

[3] At the same time, Luther sought a declaratory judgment from the court declaring the election contest statute to be an unconstitutional denial of equal protection. Although the record does not reflect that the judge ruled on that application, it would have been unnecessary in light of the court's decision to grant the dismissal motion. No issue was raised on appeal relating to that alternate application for relief and Luther did not include that alternate theory in his petition for certification. We therefore need not consider it.

Agostini argued that the information included in the petition was sufficient for the purposes of the statute; that the failure to separately verify the amended petition was a mere oversight; and that the statutory protections afforded to all voters to shield them from having to reveal the candidate for whom their votes were cast made further specificity of the kind demanded by Luther impossible. Moreover, she argued that, like a complaint being challenged for failure to state a claim, *see R.* 4:6–2(e), the court was required to afford her all possible inferences, to treat her petition as indulgently as it would a complaint, and to allow her to proceed so as to afford to her a day in court. *See Printing Mart–Morristown v. Sharp Elec. Corp.,* 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989). She argued that the election contest statute did not require her to prove that the outcome would be altered, but only mandated that she allege sufficient facts to demonstrate that there were enough challenged votes that the outcome could be different.

While the motion to dismiss was pending, the administrator of the Board of Elections reported to the court that fifteen additional absentee ballots had been found that had not been included in the prior tabulation. In light of this discovery, the court ordered a second recount of the absentee, provisional, and emergency ballots. Although the total number of absentee ballots counted still did not match the number of absentee certificates on file, with the result that there was still one missing absentee ballot, the recount proceeded. After the second recount was conducted, the results were provided to the court. The results were different and again demonstrated a net gain for Agostini. The final results gave Luther a total of 7111 votes as compared to the 7072 votes for Agostini. Luther therefore had, after the second recount, a thirty-nine vote victory over Agostini.

C.

After considering the arguments advanced on behalf of Luther and Agostini, the court granted Luther's motion to dismiss. The court concluded that the traditionally liberal pleading rules that

would otherwise permit a lack of specificity were not applicable to a petition in an election contest. The analysis began with the observation that the appropriate test against which to judge an election contest petition is found in the Supreme Court's decision in *Lehlbach v. Haynes,* 54 *N.J.L.* 77, 23 *A.* 422 (Sup.Ct.1891). Citing the operative language from that decision, as quoted more recently by our Appellate Division, *see Application of James T. Murphy,* 101 *N.J.Super.* 163, 168, 243 *A.*2d 832 (App.Div.1968), the court concluded that the petitioner in an election contest must, as a part of the petition, demonstrate facts sufficient to support relief. In particular, the court relied on the following language from *Lehlbach:*

The contestant ... insists that the statute only requires him to show illegal votes in number sufficient to change the result, if all be deducted from the incumbent's tally. We do not, however, so read the act. It makes the reception of illegal votes a ground of contest only when they are sufficient to change the result—that is, not merely to show that the plurality declared for the incumbent is erroneous, but to show that another than he was the person legally elected. *Unless the petition states circumstances which prima facie render this conclusion probable, it does not present a case within the law. State [ex rel. Roche] v. Bruggemann,* 53 *N.J.L.* 122, 20 *A.* 730 [ (Sup.Ct.1890) ]. There are other modes of proof besides the affidavit of the voter, and the obstacles in the way are not usually insuperable without compulsory process. But, at any rate, the difficulties spring from the terms of the statute, in accordance with which we must proceed in this statutory investigation. The presumption is with the incumbent, and we cannot assume, without evidence against that presumption, that the illegal ballots were for him rather than his opponents.

[*Ibid.* (quoting *Lehlbach, supra,* 54 *N.J.L.* at 81, 23 *A.* 422) (emphasis added).]

Noting that the Supreme Court continued to adhere to the *Lehlbach* formulation thereafter, *see In re Clee,* 119 *N.J.L.* 310, 325–27, 196 *A.* 476 (Sup.Ct.1938); *Groth v. Schlemm,* 65 *N.J.L.* 431, 436, 47 *A.* 502 (Sup.Ct.1900); the court concluded that our election contest law requires specificity, which Agostini's petition did not provide.

Relying on *Clee,* the court quoted the applicable standard to be applied: "the pleading must be sufficient at least to enable the incumbent to prepare his defense to the charges set forth [and] ... 'to enable him to prepare and meet the specific charges by evidence.' " *Clee, supra,* 119 *N.J.L.* at 326, 196 *A.* 476 (citing

*Lippincott v. Felton*, 61 *N.J.L.* 291, 295, 39 *A.* 646 (Sup.Ct.1898)). Reasoning that the incumbent is entitled to a presumption that the election contest was conducted fairly and that the burden of proof is on the contestant to demonstrate to the contrary, the court concluded that a pleading that lacks specificity improperly shifts the burden to the incumbent who is then forced to conduct discovery to ascertain the basis for the contest.

Turning to Agostini's assertion that there were illegal votes cast, the court concluded that the petition fell short because she had not carried the burden imposed on her by the statute. Relying on the Appellate Division's decision in *In re Mallon*, 232 *N.J.Super.* 249, 556 *A.*2d 1271 (App.Div.1989), the court concluded that the contestant, as part of the petition, was required to search out voters to support the allegations about illegal votes cast or legal votes rejected, *see id.* at 268–69, 556 *A.*2d 1271, evidence that Agostini had failed to provide. Referring to the petition as lacking in "insight with respect to illegal voters," the court found that the petition was inadequate. In this regard, the court, applying the test set forth in *Murphy, supra*, concluded that the petition was insufficient because Agostini had failed to demonstrate that, in spite of diligent efforts, she had been unable to find the particular illegal voters or that those voters had refused to disclose for whom their votes had been cast.

Furthermore, the court reasoned that although the number of challenged votes identified by Agostini was theoretically sufficient to alter the outcome, the petition was nonetheless deficient. In short, because Agostini could not identify with specificity enough illegal votes that had been cast for the winner or enough legal votes that would have been cast for Agostini but had been excluded, so as to have altered the result of the election, the petition did not meet the statutory standard of particularity. In so concluding, the court expressed concern that Agostini's failure "to develop facts and circumstances as required by the Court's Order allowing the amendment" was indicative of a lack of a sufficient factual basis for any of the petition's allegations.

The motion judge recited his reasons for granting the motion to dismiss on the record on January 4, 2006, the return date for that motion. He prepared and distributed a written decision further explaining the basis for the decision on January 19, 2006. Following the dismissal of the petition, Luther was sworn in as Mayor of the township and he has continued to serve in that role throughout the appellate proceedings.

D.

Seven days after the petition was dismissed and prior to receiving the written statement of the court's reasons, Agostini sought emergent relief from the Appellate Division. The application was denied in an order that expressed the view that there was no emergency because Luther had already been sworn into the office of mayor. Agostini filed her notice of appeal the next day.

In a published opinion, the Appellate Division reversed the order dismissing the petition and remanded the matter for an expedited plenary hearing and further proceedings. *In re the Contest of the Nov. 8, 2005 Gen. Election for the Office of Mayor for the Twp. Parsippany–Troy Hills (In re Nov. 8, 2005 Contest)*, 388 *N.J.Super.* 663, 665–66, 909 *A.*2d 1199 (App.Div.2006). The appellate panel based its decision on a review of the relevant statutory framework and the same published precedents on which the motion court had relied. In part, the Appellate Division noted that some of the precedents on which the motion court had relied were decisions made on the merits of a contest. *See, e.g., Mallon, supra,* 232 *N.J.Super.* at 253, 556 *A.*2d 1271; *Murphy, supra,* 101 *N.J.Super.* at 168, 243 *A.*2d 832. Those decisions, therefore, were based on complete records following trials of election contests and were not instructive for purposes of evaluating the sufficiency of the initial pleading.

Apart from that observation, however, the appellate panel reasoned that most of the older precedents were no longer relevant. Significantly, the panel held that the election contest statute must be interpreted in light of "modern rules of pleading [that] have

long ago eliminated technical requirements that existed when *Lehlbach* was decided." *In re Nov. 8, 2005 Contest,* 388 *N.J.Super.* at 675, 909 *A.*2d 1199. Instead, the panel noted that *"Rule* 4:5–2 only requires that the pleading 'contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader claims entitlement.' " *Ibid.* (quoting *R.* 4:5–2). The panel therefore concluded that, because the election contest statute must be read in conjunction with generally applicable rules of pleading, Agostini's petition was sufficient to afford her adversary notice of her claim and thus should not have been dismissed.

We granted certification, 189 *N.J.* 430, 915 *A.*2d 1052 (2007), and, although we do not endorse the liberal pleading rationale utilized by the appellate panel, we affirm.

## II.

Succinctly stated, the question with which we are confronted is what standard governs the adequacy of an election contest petition that is challenged through a motion to dismiss. The motion judge applied a standard, derived from a variety of published precedents construing the statute, which required the petitioner to assert with particularity the factual basis supporting her claim about illegal votes cast and legal votes rejected, and to demonstrate with specificity that the outcome would probably be different had those votes been correctly received or rejected. The appellate panel, rejecting some of those precedents as applying a standard applicable to the trial on the merits but inappropriate to a motion to dismiss, concluded that the remainder of the precedents were outdated and failed to reflect our modern liberal rules of pleading. Our consideration of the appropriate standard to be applied to test the sufficiency of an election contest petition must begin with an examination of the statute itself and with the significant alterations in its requirements that bear upon the relevance of the precedents that both the motion court and the appellate panel considered.

## A.

■ We begin our analysis with the oft-repeated admonition that election laws are to be liberally construed to the end that voters are permitted to exercise the franchise and that the will of the people as expressed through an election is heard. *See In re Gray–Sadler,* 164 *N.J.* 468, 474–75, 753 *A.*2d 1101 (2000); *Kilmurray v. Gilfert,* 10 *N.J.* 435, 440, 91 *A.*2d 865 (1952); *Kirk v. French,* 324 *N.J.Super.* 548, 552, 736 *A.*2d 546 (Law Div.1998) (citing *Wene v. Meyner,* 13 *N.J.* 185, 196, 98 *A.*2d 573 (1953)). Indeed, although in all election contests the winner argues forcefully that the election results should not be disturbed so as to ensure that the will of the electorate is effectuated, so too, does the challenger always assert that the election results demonstrate that the will of the same electorate has in some fashion been thwarted.

In a related context, the United States Supreme Court has reminded us of the sanctity of the right to vote, holding:

No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.

[*Wesberry v. Sanders,* 376 *U.S.* 1, 17, 84 *S.Ct.* 526, 535, 11 *L.Ed.*2d 481, 492 (1964) (Black, J.).]

In like vein, Chief Justice Earl Warren wrote:

As long as ours is a representative form of government, and our legislatures are those instruments of government elected directly by and directly representative of the people, the right to elect legislators in a free and unimpaired fashion is a bedrock of our political system.

[*Reynolds v. Sims,* 377 *U.S.* 533, 562, 84 *S.Ct.* 1362, 1382, 12 *L.Ed.*2d 506, 527 (1964) (Warren, C.J.).]

Our election laws provide us with the framework within which our Legislature has directed an election contest must proceed. In particular, the statute, *N.J.S.A.* 19:29–1 to –14, specifies both the grounds on which an election may be contested, and the manner in which the contest may be brought and decided.

The statute first establishes the particular grounds on which an election may be contested, *see N.J.S.A.* 19:29–1, and describes the

verified petition that must be filed to commence an election challenge, *see N.J.S.A.* 19:29–2. The statute also provides for shortened time frames within which to file an election contest petition, *see N.J.S.A.* 19:29–3, and for presentation of proofs at a hearing, *see N.J.S.A.* 19:29–4, in a proceeding "similar to those in a civil action" by a judge sitting without a jury, *see N.J.S.A.* 19:29–5. Although the time frames are condensed in deference to the need to have the election results certified and an officeholder sworn in, the statute specifically grants the judge the power to allow amendments to the petition. *Ibid.*

The statute gives the judge conducting the hearing broad powers to ensure the attendance of witnesses and the production of election records and other evidence. *See N.J.S.A.* 19:29–6. Moreover, the statute specifically grants the judge the power to require voters to disclose relevant information, including the authority to "compel [a voter] to disclose for whom he voted," *N.J.S.A.* 19:29–7, in order to determine whether the election results should be overturned. Finally, the statute confers on the judge the power to set aside an election, to declare, if appropriate, which candidate was duly elected, and to order other relief. *See N.J.S.A.* 19:29–8 to –10.

We begin with Luther's threshold assertion that the petition was correctly rejected for want of verification as required by *N.J.S.A.* 19:29–2. Agostini concedes that the amended petition that she filed after being directed to do so by the court was not verified. Nevertheless, she points out that the initial petition was verified and that the substance of the assertions did not change; she therefore contends that the failure to separately verify the amendment was an oversight that should not result in the dismissal of her challenge. Although we would not condone a complete failure to comply with the verification requirement, in light of the fact that Agostini's original petition was verified and the challenged, unverified, petition was simply an amendment, we decline to allow her petition to be rejected on that technical ground. *See Perri v. Kisselbach,* 34 *N.J.* 84, 86, 167 *A.*2d 377 (1961) (holding

that election contests "should be determined upon the merits and not upon technical artistry in pleading"). We turn, then, to the merits of the dispute before us relating to the substantive sufficiency of the petition.

## B.

The dispute that gave rise to Agostini's petition centered on her allegation that illegal votes had been received or legal votes had not been counted.[4] More specifically, the statute permits this as a ground for an election contest, providing as follows: "[w]hen illegal votes have been received, or legal votes rejected at the polls sufficient to change the result." *N.J.S.A.* 19:29–1(e). The origins of this provision are quite ancient, and it has been included as a ground to challenge a municipal election since 1876.[5]

Three other provisions of the statute are central to our consideration of the issues before us, because they give content to the particular ground for the challenge asserted here, and inform our analysis of the requirements for the petition to proceed and to be considered. The first is the provision setting forth both the general requirements for an election contest petition and the further requirements for a petition asserting illegal votes cast or legal votes rejected. *See N.J.S.A.* 19:29–2. The second sets forth the scope of the judge's authority to order amendments to the petition. *See N.J.S.A.* 19:29–5. The third describes the conduct of the trial on the petition and, in particular, the power of the judge to compel voters to give testimony. *See N.J.S.A.* 19:29–7.

---

[4] Although Agostini's petition also included a broadly-worded assertion of "mal conduct" that might be understood to be a separate challenge pursuant to *N.J.S.A.* 19:29–1(a), she withdrew that basis for her challenge during the proceedings before the motion court.

[5] The origin of this language is not germane to our analysis; the significance is that this ground, in this precise formulation, can be found in the statute in effect as of the date of the earliest precedents relied on by the motion court and the appellate panel.

We begin with that part of the statute that sets forth the requirements for the election contest petition. It provides:

The petition shall be verified by the oath of at least 2 of the petitioners, or by the candidate filing the same, as the case may be, *which verification may be made on information and belief.* The petition shall be accompanied by a bond to the State in the case approval or disapproval of any proposition is to be contested and to the incumbent in all other cases, with 2 or more sureties, or a deposit of cash security, to be approved by such judge, in the penal sum of $500.00, conditioned to pay all costs in case the election be confirmed, or the petition be dismissed or the prosecution fail. *When the reception of illegal or the rejection of legal voters is alleged as a cause of contest, the names of the persons who so voted, or whose votes were rejected, with the election district where they voted, or offered to vote, shall be set forth in the petition, if known.*

[*N.J.S.A.* 19:29–2 (emphasis added).]

The statutory section governing the contents of the petition has two provisions that are relevant to the dispute before this Court. First, the statutory provision describing the required contents of the petition refers to information about particular voters whose votes were received illegally or whose votes were improperly rejected, which "shall be set forth in the petition, *if known.*" *N.J.S.A.* 19:29–2 (emphasis added). Second, the same section of the statute requires that the contents of the petition be verified, "which verification may be made *on information and belief.*" *Ibid.* (emphasis added). These two provisions are central to our analysis.

The language now included in *N.J.S.A.* 19:29–2 requiring that information be provided "if known" has been a part of the election contest statute since 1876. *See* Act to Regulate Elections, *L.* 1876, c. 124, § 105. The 1876 Act, however, created a mechanism for an election contest that is quite different from the statute now in effect. To begin with, the method for challenging an election varied depending upon which elected office was involved, with different requirements for challenges to elections of the governor, *id.* §§ 88–99, for the State Legislature and Congress, *id.* §§ 116–21, and for county and municipal offices, *id.* §§ 100–15.

In relevant part, the 1876 Act provided that a petition to challenge a municipal election could not be filed by the contestant for the seat alone, but was required to be "endorsed by at least

fifteen qualified electors of the proper ... township ... setting forth one or more of the causes specified ... and *the particular circumstances of the case duly verified* by the oaths or affirmations of at least two of said petitioners...." *Id.* § 104 (emphasis added). The 1876 Act, therefore, specifically required the petition to include "the particular circumstances" that gave rise to the challenge, and that those particular circumstances would be verified by two electors.

The statute governing elections and election contests has been revised and re-enacted on several occasions since 1876.[6] The first major adoption of a revised Act to Regulate Elections occurred in 1898. *L.* 1898, *c.* 139. The mechanism for challenging a municipal election, including the requirement that the "particular circumstances" of the case be set forth in the petition, continued to be included in the 1898 Act. *Id.* § 166.

The next revised Act to Regulate Elections was brought about by a joint legislative resolution, adopted in 1916, which called for the creation of a commission "to revise, simplify, arrange and consolidate all the public acts of the Legislature of this State in relation to primaries and elections...." *S.J. Res.* 4 (1916). In 1917, the Commission to Revise the Primary and Election Laws submitted its report, together with its proposed revision to the election laws. *See* Bureau of State Research, *An Analytical Revision of the New Jersey Election Laws* (1919). Although the report does not specifically comment upon the reasons for the suggested changes to the contested election provisions, the report's introduction refers to the goals of standardizing and simplifying election procedures in general. *See Report of the Commission to Revise the Primary and Election Laws,* at 3–6 (1917).

---

[6] Prior to 1930, when the Legislature adopted the Act that is the source for our current election statute, *see L.* 1930, *c.* 187, the Legislature periodically reviewed the entire Act Regulating Elections and adopted an updated, uniform Act to replace the previously existing Act in its entirety rather than changing the Act by amending specific sections.

In adopting the revised Act to Regulate Elections in 1920, the Legislature effected several changes in the provisions governing election contests. First, most of the earlier distinctions between which elected office was the focus of the challenge were deleted and all election contests began to be governed by rules similar to the ones previously in place for municipal elections. *See L.* 1920, *c.* 349, *art.* XXVII. Second, as an alternative to the requirement that the petition be "signed by at least fifteen voters" and "verified by the oath of at least two" of them, the 1920 Act created an alternative for the defeated candidate to sign and verify the petition himself or herself. *Id. art.* XXVII, § 3.

Far more important for our analysis, however, the 1920 Act deleted the requirement that the petition set forth the "particular circumstances" and provided instead that the "verification may be made *on information and belief.*" *Ibid.* (emphasis added). At the same time, however, the "if known" language continued to be included as part of the requirement relating to illegal votes. The relevant language from the 1920 Act, therefore, in contrast to the strict requirements of the 1876 Act, provided as follows:

> In all other cases said contest shall be heard and determined by the several Circuit Courts of this State, and shall be commenced by the filing of a petition therefor with the clerk of said Circuit Court holding session in the county wherein such office or proposition is to be contested, signed by at least fifteen voters of said county or by any defeated candidate for said nomination, party position or public office.
>
> Such petition shall be verified by the oath of at least two of said petitioners, *or by the candidate filing the same, as the case may be, which verification may be made on information and belief.* Said petition shall be accompanied with a bond to the incumbent, with two or more sureties, to be approved by the justice holding such circuit, in the penal sum of five hundred dollars, conditioned to pay all costs in case the election be confirmed, or the petition be dismissed or the prosecution fail. When the reception of illegal or the rejection of legal voters is alleged as a cause of contest, the names of the persons who so voted, or whose votes were rejected, with the election district where they voted, or offered to vote, shall be set forth in the petition, *if known.*
>
> [*Ibid.* (emphasis added).]

· Certainly the decision to eliminate the widely different methods for contesting elections based on which elected office was involved, in favor of a more uniform election contest procedure, served the

Legislature's goals of standardization and simplification. Beyond that, however, there is no legislative history to shed light on the meaning of the changes to the provisions in issue.

In 1930, the Legislature enacted a new Act to Regulate Elections, which became the source for much of Title 19. *L.* 1930, *c.* 187. The sections of the 1930 Act that relate to election contests are no different from the corollary provisions in the 1920 Act. *Id.* par. 356, sec. 2. Although the modern statute governing elections and election contests has been repeatedly amended since 1930,[7] *N.J.S.A.* 19:29–2 continues to include the language permitting the petition to be verified "on information and belief," and unlike the 1876 Act, makes no reference to a requirement that "particular circumstances of the challenge" be set forth.

## C.

Our understanding of the election contest statute, as it bears on the requirements for a petition, is also informed by the other two provisions that we have identified. First, the statute relating to amendments, *N.J.S.A.* 19:29–5, has also changed over time. The 1876 Act, in describing the manner in which the proceedings on the petition would be conducted, provided as follows:

[T]he proceedings shall be similar to those in an action at law so far as practicable, but shall be under the control and direction of the court, which shall have all the powers necessary to the right hearing and determination of the matter, with power to order any amendments in the petition or proceedings as to form, and to allow adjournments to any time not more than thirty days thereafter for the benefit of either the contestant or incumbent, the grounds for such adjournment being shown by affidavit, on such terms as shall seem reasonable to the court.

[Act to Regulate Elections, *supra*, *L.* 1876, § 107.]

---

[7] Included among the enactments since 1930 are several amendments to *N.J.S.A.* 19:29–2. These, however, are of no relevance to the issues we consider. In large measure, the amendments addressed such issues as the judge to whom an election contest would be assigned, *compare L.* 1947 *c.* 6, § 1 *with L.* 1953, *c.* 19, § 33, and were occasioned by changes in the organization of the court system itself.

Therefore, the judge's power to permit an amendment to the petition or in the proceedings originally was a limited one, restricted only to amendments "to form." *Ibid.* Presumably, that limitation was included in recognition of the higher pleading requirement demanded by virtue of the "particular circumstances" language of section 104. If the statute required that the pleading meet a heightened threshold of particularity, it would be inconsistent to permit substantive amendments during the proceedings.

The language of our current statute, however, which is derived from the 1930 Act, is far less restrictive. The current language permits amendments to the petition or in the proceedings both as to form and substance. *N.J.S.A.* 19:29–5 provides:

The proceedings shall be similar to those in a civil action so far as practicable, but shall be under the control and direction of the court, which shall hear and determine the matter without a jury, with power to order any amendments in the petition, or proceedings as to form or substance, and to allow adjournments to any time not more than thirty days thereafter for the benefit of either party, on such terms as shall seem reasonable to the court, the grounds for such adjournment being shown by affidavit.

[*Ibid.*]

Viewed together with the language in *N.J.S.A.* 19:29–2, and when read as a whole, the current statute permits significantly more latitude than did the 1876 Act. These differences bear not only upon our understanding of the meaning of our current election contest statute, but upon the weight to be accorded to the decisions on which the motion court and the Appellate Division relied.

■ The final aspect of the statute that affects our consideration of the issues is *N.J.S.A.* 19:29–7, which authorizes the court in an election contest to compel a voter whose vote has been cast illegally to reveal how he or she voted. The precise language of the section is not germane to our analysis and, indeed, has not changed since the 1876 Act. The significance, instead, is that the power to compel any voter to reveal for whom the vote was cast is reserved to the court; no petitioner has the ability to require that voters reveal how they voted and thus no petitioner can, short of a

trial on the merits, prove that the outcome would have been different.

We turn then to an analysis of the issues presented in this matter in light of this explanation of the history of these several sections of the election contest statute now in effect.

## III.

Our analysis of the statutory requisites for a petition and of the standard against which courts must test the sufficiency of any election contest petition requires that we consider the precedents relied on in light of the statutory language that each of the courts was called on to construe. We begin, as we must, with *Lehlbach,* a decision that has been the principal focus throughout these proceedings.

When the Supreme Court construed the election contest statute in *Lehlbach,* it was considering the 1876 statute. That statute included the language requiring that a petition set forth the facts with particularity. By 1938, when the Supreme Court considered the petition in *Clee,* some of the relevant statutory language had changed. In fact, the particularity requirement had been deleted and therefore Clee argued that his petition should be considered in light of that legislative change. The Court rejected that argument, however, because Clee's petition, which challenged the results of the gubernatorial election, alleged that there was "malconduct, fraud or corruption" in every one of the 519 election districts in Hudson County. *Clee, supra,* 119 *N.J.L.* at 316, 321–22, 196 *A.* 476. Based on this assertion, Clee sought to have all of the 221,708 votes from that county declared to be invalid. *Id.* at 316, 196 *A.* 476. Because the specific ground asserted was a variety of fraud, as to which pleading with particularity is always required, the Court held that the change in the statute was not relevant. *Id.* at 322–23, 196 *A.* 476. Nothing in that aspect of *Clee,* however, suggests that the change in the language of the statute did not alter the pleading requirement as to the other statutory grounds.

The petition in *Clee* also raised the principal ground that Agostini utilized, arguing that "illegal votes have been received or legal votes rejected" in the same county because persons were permitted "to vote on names other than their own, which names were the names of theretofore registered persons; the names of the said illegal voters, and the names under which they voted are unknown to the petitioner at this time...." *Id.* at 316–17, 196 *A.* 476. In support of this assertion, Clee attached to his petition a list of the municipalities in the county and, without identifying even a single challenged voter, asserted that "at least 55,000 votes were cast for" his opponent. *Id.* at 318, 196 *A.* 476. Apart from that general accusation, however, he gave no suggestion as to who the challenged voters might be and did not explain how he determined that 55,000 out of the 168,699 votes cast in the county for his opponent were illegal.

In rejecting this aspect of the petition, the Court first noted that the statute was identical to the one construed in *Lehlbach* and cited the relevant provisions. *Id.* at 324, 196 *A.* 476 (citing *L.* 1876, c. 124). Indeed, the language cited by the Court was identical to the statute as it existed at the time of *Clee,* because the section to which the Court referred was simply the statutory ground for the contest itself, namely, the general language permitting a challenge based on illegal votes. When the Court then explained the reasons for rejecting this aspect of the petition, however, it quoted the *Lehlbach* decision both for its vagueness analysis and for the proposition that the incumbent is entitled to a presumption. *Clee, supra,* at 324–25, 196 *A.* 476.

Although this aspect of the decision in *Clee* made no reference to the fact that the "particularity" language that was significant in *Lehlbach* had been deleted from the statute in favor of the "if known" formulation, we do not regard that as meaningful. Rather, regardless of which statutory language applied, the *Clee* petition fell short. Even under the terms of our modern statute currently in effect and against which we must test Agostini's challenge, a petition that, like Clee's, simply appended a list of

municipalities and asserted that thousands of votes were illegally received or rejected, would fail for vagueness.

By the same token, some of the other precedents relied on by the motion court lack relevance to a motion to dismiss a petition on its face. In particular, the statute empowers the court, and only the court, to compel a challenged voter to reveal his vote. *See N.J.S.A.* 19:29–7. Therefore, because decisions addressing election contests following a trial on the merits include evidence about how particular votes were cast, those decisions are necessarily inapposite. *See, e.g., Mallon, supra,* 232 *N.J.Super.* at 268, 556 *A.*2d 1271; *Murphy, supra,* 101 *N.J.Super.* at 168, 243 *A.*2d 832. Reliance on those decisions is misplaced when only the sufficiency of a petition is in issue. In light of the fact that no challenger can ever, as a practical matter, compel that evidence, *see N.J.R.E.* 513, we cannot test the sufficiency of a petition against the proof requirements that would apply were the dispute tried to a conclusion.

## IV.

An election contest petition is not a complaint, the purpose of which is to give one's adversary notice of the claim. *See R.* 4:5–2; *Spring Motors Distrib., Inc. v. Ford Motor Co.,* 191 *N.J.Super.* 22, 29–30, 465 *A.*2d 530 (App.Div.1983). It is not, in response to a motion to dismiss filed pursuant to *R.* 4:6–2(e), entitled to be "searche[d] ... in depth and with liberality to ascertain whether ... a cause of action may be gleaned even from an obscure statement of claim...." *See Printing Mart–Morristown, supra,* 116 *N.J.* at 746, 563 *A.*2d 31 (quoting *Di Cristofaro v. Laurel Grove Memorial Park,* 43 *N.J.Super.* 244, 252, 128 *A.*2d 281 (App.Div.1957)). It is, instead, a petition that takes the place of a pleading to initiate the election contest, which must set forth one of the permitted grounds, and which must otherwise comply with the statutory requirements.

As such, we do not adopt the Appellate Division's view that our modern pleading rules can be engrafted onto the statute's requirements so as to permit the petition to be equated with a complaint, and therefore to be tested against liberal notice pleading concepts. In testing the sufficiency of the petition, neither the "indulgence" afforded complaints nor the modern notice pleading approach may take the place of the statute's demands. Rather, it is the language of the statute itself, and the changes in that language during the decades since *Lehlbach* and *Clee* were decided, which support our conclusion as to the sufficiency of this petition.

Neither, however, is it appropriate, in light of the significant changes in the relevant statutory provisions governing election contests and petitions, to scrutinize such a petition against standards of pleading with particularity long ago discarded from the statute. To be sure, an election contest petition that rests on an assertion of "malconduct, fraud or corruption," *N.J.S.A.* 19:29–1(a), would be subject to our ordinary requirements for pleading any similar fraud-based cause of action, *see R.* 4:5–8(a); *Shebar v. Sanyo Bus. Sys. Corp.,* 218 *N.J.Super.* 111, 526 *A.*2d 1144 (App. Div.1987), *aff'd,* 111 *N.J.* 276, 544 *A.*2d 377 (1988), but only because of the nature of the ground asserted and not because of any added requirement in the election contest statute. Nor is there anything in the statute that suggests that the petition must be so specific that it demonstrates an entitlement to relief on its face.

Indeed, the statute's provision requiring that information be set forth "if known," *N.J.S.A.* 19:29–2, strongly militates in favor of the contrary conclusion. Moreover, the provisions in the statute relating to the trial of the contest make plain that it is now within the power of the judge to permit an amendment as to form or substance of the allegations, *see N.J.S.A.* 19:29–5, plainly supporting the proposition that the petition itself might be in need of amendment even as to its substance.

In this matter, as the Appellate Division observed, the motion court erred in applying to the petition the test for sufficiency set forth in precedents decided on a full trial record. Thus, in relying on *Murphy* and *Mallon*, the motion court essentially demanded of this petitioner evidence to be included in the petition that she would have been required to produce at the trial of the matter and, to some extent, evidence that only a judge, in a trial on the merits, would be able to secure by compulsion. In doing so, however, the motion court inadvertently held the petition to a standard nowhere mandated in the statute prior to the conclusion of the proofs. There is no requirement that the petition set forth sufficiently detailed information to specify all of the proofs that would be presented at trial. Indeed the language in *Clee* about the need to permit the incumbent to be able to prepare a defense is based on that court's analysis of the particularity language of *Lehlbach*.

Viewed in this context, the petition was sufficient to withstand the motion to dismiss for failure to state a claim. Unlike the broad and vague assertions described in *Clee,* and unlike the equally broad attack on the election in *Murphy,* this petition sufficed. It listed the names and election districts of the voters whose votes were being challenged. It included a coded reference to the basis for the challenge to each of those votes. Moreover, the petition described irregularities with absentee ballots, and the proceedings uncovered missing or lost absentee ballots that could have affected the outcome of the election. No more was required of Agostini in order to permit her to proceed on her petition. To be sure, in the end she may or may not be able to prove her allegations and she may or may not be able to alter the outcome of the contest. That, however, is a matter for evaluation after the statutory period allotted for discovery and after a trial.

## V.

We do not lightly determine that this petition should not have been dismissed. Indeed, in view of the fact that the election

contest statute is designed to provide a speedy and efficient mechanism for a challenge to be brought and completed, the significant delay in the appellate process, which has been far from optimal, would better be avoided in future appeals.

In this case, the passage of time alone might make it impossible for Agostini to prove the allegations she has made. At the same time, should she succeed, a change in administration so long after the initial election and installation of Luther into the office may, in some measure, be disruptive to the municipality. Nevertheless, because there is sufficient information in this petition, consistent with the statute, to entitle Agostini to proceed, we direct that she be permitted to do so expeditiously.

## VI.

The order of the Appellate Division is affirmed as modified and the matter is remanded to the Assignment Judge for further proceedings consistent with this opinion.

Justice RIVERA–SOTO, concurring in part and dissenting in part.

To the extent the majority "do[es] not adopt the Appellate Division's view that our modern pleading rules can be engrafted onto the [election contest] statute's requirements so as to permit the [election contest] petition to be equated with a complaint, and therefore to be tested against liberal notice pleading concepts[,]" *ante* at 570, 934 *A*.2d at 621, I concur. However, because the majority's holding is premised on an incorrect impeachment of prior precedent and a failure to comply with the trial court's lawful order, I respectfully dissent.

## I.

This appeal requires that we examine the sufficiency of a statutorily authorized petition seeking to contest an election on the basis that "illegal votes have been received, or legal votes rejected

at the polls [would have been] sufficient to change the result." *N.J.S.A.* 19:29–1(e). Citing various grounds, the trial court dismissed the election contest petition filed by the unsuccessful candidate as failing to state a claim on which relief can be granted. The Appellate Division reversed and remanded, concluding that under our liberalized pleading rules, the election contest petition "adequately appraised [the successful candidate] of the claims being made with detailed specificity so that he was fully able to prepare a defense." *In re the Contest of the November 8, 2005 Gen. Election for the Office of Mayor for the Twp. [of] Parsippany–Troy Hills,* 388 *N.J.Super.* 663, 676, 909 *A.*2d 1199 (App.Div. 2006) [hereinafter *In re Contest* ].

An election challenge is in derogation of the common law and is a creature of the Legislature. Thus, statutory election contests must hew closely to the requirements that the Legislature has adopted for the prosecution of any claim thereunder, as those requirements have been consistently enforced. When measured against that yardstick, the election contest petition in this case fails.

## A.

On December 8, 2005, Rosemary Agostini, the runner-up candidate for election as mayor of the Township of Parsippany–Troy Hills, filed a verified petition pursuant to the election contest statute, *N.J.S.A.* 19:29–1 to –14, alleging that, in the mayoral election held one month earlier, "illegal votes ha[d] been received, or legal votes [had been] rejected at the polls sufficient to change the result[,]" in violation of *N.J.S.A.* 19:29–1(e).[1] That statute specifically provides that any election contest "shall be commenced by the filing of a petition" and that "[t]he petition shall be verified

---

[1] Agostini originally also alleged "[m]alconduct, fraud or corruption on the part of the members of any district board, or of any members of the board of county canvassers, sufficient to challenge the result[,]" in violation of *N.J.S.A.* 19:29–1(a). Agostini later withdrew that allegation, and it is not before us.

by the oath of at least 2 of the petitioners, or by the candidate filing the same[.]" *N.J.S.A.* 19:29–2. It also provides that

[w]hen the reception of illegal or the rejection of legal voters is alleged as a cause of contest, the names of the persons who so voted, or whose votes were rejected, with the election district where they voted, or offered to vote, shall be set forth in the petition, if known.

[*Ibid.*]

In a written opinion, the trial court described Agostini's verified petition as follows:

The [v]erified [p]etition in paragraph 7 stated "[u]pon information and belief, the following problems and violations of the provisions of *N.J.S.A.* 19:29–1 and the other provisions of Title 19, occurred such that a fair, free and full expression of the intent of the voters was not had. To the extent known, voters are identified pursuant to *N.J.S.A.* 19:29–2." The [p]etition then listed the "problems and violations" in subparagraphs 7(a) through (g), attaching exhibits with names and addresses, the most number and significant of which came in claimed illegal votes. (The term illegal votes includes herein claimed invalid absentee ballots.) *However, paragraph 7 did not set forth any specifics. Only broad allegations were made.* [ (Emphasis supplied).]

The trial court then explored the remainder of Agostini's petition, noting that she relied on "what 'a continuing investigation may disclose' rather than on what any investigation revealed[,]" and that "especially absent ... throughout the [p]etition were any statements that illegal votes were cast for Mr. Luther and/or legal votes cast for Ms. Agostini were not counted."

On December 13, 2005, the trial court conducted a telephone conference with counsel for both Michael Luther, the successful mayoral candidate, and Agostini. Focusing on "the lack of specifics in the [p]etition[,]" the trial court, without objection, allowed the filing of an amended verified petition, provided the same was filed no later than December 19, 2005. However, again without objection, the trial court ordered that "[t]he amendment shall set forth the facts, circumstances and statutory basis regarding the deficiencies as alleged in the [p]etition, as amended, and attached exhibits[.]" The trial court also provided for discovery and pre-trial motions, and scheduled the cause for a hearing on January 4, 2006. Significantly, neither Luther nor Agostini objected to that order.

On December 20, 2005, Agostini filed her "First Amended Verified Petition."[2]   As described by the trial court,

the [a]mended [p]etition in its pleaded language was identical and word for word to the initial [p]etition. No changes were made and no facts and circumstances were alleged as required by Court Order except for adding a Code Key Chart to the Exhibits which set forth broad categories without specifics, which code key was referenced in the exhibits against names and addresses of voters.

The trial court noted that "there was no pleaded paragraph added to the [a]mended [p]etition to even at a minimum state, for example, that upon information and belief illegal votes were cast for Mr. Luther and legal votes cast for Ms. Agostini were not counted which [would] determine a change in the election results." The trial court remarked that "there was also no pleaded paragraph that set forth any information by exhibit, facts, affidavit or otherwise that even one illegal vote was cast for Mr. Luther or legal vote for Ms. Agostini was not counted."

Luther moved to dismiss Agostini's petition for failing to state a claim on which relief can be granted.   Arguing that the election contest petition had not been pled with specificity and that the amended petition "presented nothing more than suspicion or

---

2 Pursuant to the provisions of the trial court's December 12, 2005 order, Agostini's amended verified petition was untimely; she filed it one day after the deadline set forth in the trial court's order.   The untimeliness of Agostini's amendment has not been raised by the parties.

Luther has claimed that Agostini's amended verified petition was not itself verified.   According to Luther, because the election contest statute requires that the petition be verified, Agostini's failure to verify her amendment—even though her original petition was verified—is fatal.   The majority concludes that, "[a]lthough we would not condone a complete failure to comply with the verification requirement, in light of the fact that Agostini's original petition was verified and the challenged, unverified, petition was simply an amendment, we decline to allow her petition to be rejected on that technical ground."  *Ante* at 560, 934 A.2d at 615.   Because Agostini's petition, even if verified, did not satisfy the statutory requirements, one need not reach that issue.   That said, the better practice clearly would have been to verify the amended petition as if it had been the initial filing, and no excuse—much less a viable excuse—has been tendered by Agostini for that failure.   Particularly in light of the majority's strong reliance in its analysis on the statutes requirement that an election contest petition be verified, its willingness to overlook that requirement as a technical ground strikes a logically discordant note.

conjecture to support its allegations[,]" Luther reasoned that "election contests, unlike traditional civil actions, require specificity in pleadings especially where the contest is based on illegal votes." Asserting that election contests should be gauged by the same standards that apply to all civil litigation, Agostini argued that she was entitled to the benefit of all inferences and her election contest petition should be sustained. She also claimed that her petition was sufficient to meet the requirements of the election contest statute and that any further details should abide the hearing required on short notice under *N.J.S.A.* 19:29–4 (providing that election contest petition shall be heard "not more than 30 nor less than 15 days after the filing of the petition").

On January 4, 2006, the return date on Agostini's election contest petition, the trial court considered and granted Luther's motion to dismiss challenging the legal sufficiency of Agostini's election contest petition. The trial court reaffirmed the principle that " '[b]ecause the right to vote is the bedrock upon which the entire structure of our system of government rests, our jurisprudence is steadfastly committed to the [principle] that election laws must be liberally construed to effectuate the overriding public policy in favor of the enfranchisement of voters.' " (quoting *Afran v. County of Somerset,* 244 *N.J.Super.* 229, 232, 581 *A.*2d 1359 (App.Div.1990)). Placing Agostini's election contest petition in context, the trial court explained that " '[t]he fundamental purpose of an election contest is to ascertain the true will of the electorate. The burden of proof lies upon the contestant to show that such will was thwarted [up]on one or several of the statutory grounds.' " (quoting *Kirk v. French,* 324 *N.J.Super.* 548, 552, 736 *A.*2d 546 (Law Div.1998) (citations and editing marks omitted)).

Specifically addressing the statutory pleading requirements for an election contest petition and citing *In re Petition of Clee,* 119 *N.J.L.* 310, 196 *A.* 476 (Sup.Ct.1938), the trial court explained that "in order to challenge the popular vote of the individuals who participate[d] in an election, there must be a pleading that sets forth some specificity with respect to the statutory grounds by

which an election may be contested." The trial court noted that "mere suspicion is not enough, nor should there be mere general allegations with respect to a statutory ground; that is, it would be insufficient to simply say we are challenging this election on the grounds of [*N.J.S.A.* 19:]29–1(e) or a general statement regarding the legal votes and rejected votes." It explained that the reason for requiring specificity in pleading in an election contest petition was straightforward: "the burden is on the contestant to show by a preponderance of the evidence that there [are] statutory grounds to contest the election." As the trial court noted,

> [i]f there is a general pleading, without specificity, it has the effect ... of switching that burden to the ... successful candidate, because they must go forward in discovery and try to ascertain all the reasons ... there was a contest alleged by the petitioner.

Rejecting Agostini's claim that liberal pleading rules should apply to election contest petitions and, hence, should save the petition from dismissal, the trial court explained that

> a petition challenging an election is a statutory procedure not set by rules of court; and it is unlike a civil complaint with respect to its requirements in pleading. It is a petition. It is not a complaint, it is a petition; and it is a petition which is stating grounds by which an unsuccessful candidate wishes to contest voting that took place....
>
> So that you do not treat it the same as a complaint under our rules of courts as a simple pleading. You need to look at it in terms of what it is, a statutory procedure set forth by our legislature[.]

Comparing Agostini's petition against that standard, the trial court concluded that "[t]here's nothing in the petition ... any type of certifications, affidavits, whatever, in terms of, for example, as to legal votes cast ... how, indeed, those votes are illegal, what are the facts" and that "[t]here is no insight in the pleadings offered ... with respect to legal votes."

The trial court thus reasoned that the requirement for specificity in pleading an election contest petition was grounded on procedural due process principles of notice and opportunity to be heard. As it set forth,

> this is what's contemplated, that there be some allegations that have support so that ... it's not a case of just listing the statutory grounds, but giving the

respondent the opportunity to formulate a ... defense to the specific allegations as alleged.

The reason for that is ... a hearing should not be the hope that something can be found by calling 125 people. A hearing has to have some basis in the petition because the petition is not a civil complaint, ... where it can be broadly pled. It is a petition with specific allegations on a very serious matter; which is, contesting an election ... after a vote and after the voters have spoken in that regard.

The trial court ultimately characterized Agostini's election contest petition as

in effect, [ ] shifting the responsibility to show what occurred here to the successful candidate. That's not what's contemplated. You lay out your reasons in your pleading, and then have discovery on those reasons. [One s]imply do[es] not do a broad brush in the hope that at the hearing you'll be able to show more through testimony in combination with whatever documents were produced in that regard and leave to the successful candidate the burden of going forward in discovery to try to ascertain what all of this means in that regard.

### B.

It is an unquestionable proposition that " '[a] citizen's constitutional right to vote for the candidate of his or her choice necessarily includes the corollary right to have that vote counted at full value without dilution or discount.' " *In re Gray–Sadler,* 164 *N.J.* 468, 474, 753 *A.*2d 1101 (2000) (quoting *Reynolds v. Sims,* 377 *U.S.* 533, 555 n. 29, 84 *S.Ct.* 1362, 1378 n. 29, 12 *L.Ed.*2d 506, 524 n. 29 (1964)). "To preserve those rights, our state election laws are designed to deter fraud, safeguard the secrecy of the ballot, and prevent disenfranchisement of qualified voters[, and i]n furtherance of those goals, we have held that it is our duty to construe election laws liberally[.]" *Id.* at 474–75, 753 *A.*2d 1101. *See also Wene v. Meyner,* 13 *N.J.* 185, 197, 98 *A.*2d 573 (1953) (holding that " '[e]lection laws are to be liberally construed so as to effectuate their purpose' " (quoting *Kilmurray v. Gilfert,* 10 *N.J.* 435, 440, 91 *A.*2d 865 (1952))).

That obligation—"to construe election laws liberally"—is tempered by our countervailing duty in respect of statutorily granted rights that are in derogation of the common law. *See In re Petition of Byron,* 165 *N.J.Super.* 468, 473, 398 *A.*2d 599 (Law Div.1978) (explaining that "the public election mechanism is entire-

ly a statutory creation lacking any common-law antecedents"), *aff'd*, 170 *N.J.Super.* 410, 406 *A.*2d 982 (App.Div.) (per curiam), *certif. denied*, 82 *N.J.* 280, 412 *A.*2d 786 (1979). In that context, our duty is clear: "a statute in derogation of the common law should be strictly construed." *Marshall v. Klebanov*, 188 *N.J.* 23, 37, 902 *A.*2d 873 (2006) (citing *Velazquez v. Jiminez*, 172 *N.J.* 240, 257, 798 *A.*2d 51 (2002)). It is through that prism that we must gauge the requirements of the election contest statute.

## C.

Chapter 29 of Title 19 of our consolidated statutes, *N.J.S.A.* 19:29–1 to –14, sets forth in detail the grounds available and procedures to be followed for the contest of nominations and elections. Among those grounds, *N.J.S.A.* 19:29–1(e) provides for an election contest "[w]hen illegal votes have been received, or legal votes rejected at the polls sufficient to change the result." The procedure to be followed is principally set forth in *N.J.S.A.* 19:29–2, which states that "the contest shall be commenced by the filing of a petition" and that "[t]he petition shall be verified by the oath of at least 2 of the petitioners, or by the candidate filing the same, as the case may be, which verification may be made on information and belief." The statute also requires that "[t]he petition shall be accompanied by a bond" and that "[w]hen the reception of illegal or the rejection of legal voters is alleged as a cause of contest, the names of the persons who so voted, or whose votes were rejected, with the election district where they voted, or offered to vote, shall be set forth in the petition, if known." *Ibid.*

Recognizing the need to address election contests without delay, the statute also provides that "[t]he petition contesting any election to public office ... shall be filed not later than 30 days after such election," *N.J.S.A.* 19:29–3, and that the court shall set a hearing on the petition "not more than 30 nor less than 15 days after the filing of the petition, and the contestant shall cause a notice of such hearing ... to be served ... on the incumbent at least 10 days before the day set for trial[,]" *N.J.S.A.* 19:29–4. The

statute further provides that "[t]he proceedings shall be similar to those in a civil action so far as practicable," and that the court will "determine the matter without a jury, with power to order any amendments in the petition, or proceedings as to form or substance, and to allow adjournments to any time not more than thirty days thereafter for the benefit of either party, on such terms as shall seem reasonable to the court[.]" *N.J.S.A.* 19:29–5. Consistent with that mandate, the statute empowers the court to "compel the attendance of any ... person capable of testifying concerning the same, and also [to] compel the production of all ballot boxes, books, papers, [etc.]," *N.J.S.A.* 19:29–6, and specifically authorizes the court to

> require any person called as a witness who voted at such election to answer touching his qualification as a voter, and if the court, from his examination, or otherwise, is satisfied that he was not a qualified voter in the election district where he voted, he may compel him to disclose for whom he voted.
>
> [*N.J.S.A.* 19:29–7.]

*See N.J.R.E.* 513 (codifying *N.J.S.A.* 2A:84A–25 ("Every person has a privilege to refuse to disclose the tenor of his vote at a political election unless the judge finds that the vote was cast illegally")); *N.J.R.E.* 804(b)(7) (noting that, if declarant is unavailable, "[a] statement by a voter concerning the voter's qualifications to vote or the fact or content of the vote" is "not excluded by the hearsay rule").

The remainder of the election contest statute addresses the procedures upon and following entry of judgment on the election contest. *See N.J.S.A.* 19:29–8 (providing that "[t]he judge shall pronounce judgment whether the incumbent or any contestant was duly elected, and the person so declared elected will be entitled to his certificate"); *N.J.S.A.* 19:29–9 ("If the judgment be against the incumbent, and he has already received a certificate of election, the judgment shall annul it. If the judge finds that no person was duly elected, the judgment shall be that the election be set aside."); *N.J.S.A.* 19:29–10 (providing that court may "issue an order" placing the successful party in office); *N.J.S.A.* 19:29–11 (explaining that "party against whom judgment is rendered may

have it reviewed by the Appellate Division ... on an appeal in lieu of prerogative writ"); *N.J.S.A.* 19:29–13 (addressing enforcement of judgment on appeal); *N.J.S.A.* 19:29–14 (assessing liability for costs).

It is against that backdrop that compliance by Agostini's election contest petition with that comprehensive statutory framework must be measured.

### D.

In her initial verified petition, Agostini asserted seven categories of "problems and violations" that she alleged resulted in the absence of "a fair, free and full expression of the intent of the voters[.]" Without any additional detail, Agostini generally claimed that:

(a) Persons who were entitled to vote had their votes rejected and were not allowed to vote [ ];

(b) Illegal votes were received [ ], including persons who voted and were not residents, were imposters and/or otherwise were unqualified to vote or participate in the General Election;

(c) In some polling places, more persons entered and voted on the machines than voting authorities issued [ ];

(d) Upon information and belief, wrongful assistance occurred with regard to voters and absentee ballots, together with possible intimidation, violation of secrecy of the ballot and overreaching;

(e) Absentee ballots were not applied for, handled, messengered, returned, marked or processed in accordance with the statute [ ];

(f) There were 501 absentee ballots of voters approved for counting by the Board of Elections for this election, yet 507 absentee ballots were counted on election night. At the recount, Petitioner gained a vote but unexplainabl[y] only 506 absentee ballots were counted. As such, there were more ballots counted than were received from voters and absentee ballots which were initially approved and counted, are now missing and cannot be accounted for by the Board of Elections.

(g) The election process and workers failed to follow, implement, and/or disregarded the statutory requirements and protections to ensure a fair election.

Via exhibits attached to her verified petition, Agostini listed, to the extent she then knew, (1) the names and addresses of those voters she claimed had their legal votes rejected; (2) the names, addresses and political party affiliation of those voters she alleged had illegal votes received; (3) the names and addresses of those voters

she claimed had absentee ballots improperly recorded; and (4) alleged discrepancies in voting machines. Nothing in Agostini's initial verified petition placed Luther on notice of how "illegal votes ha[d] been received, or legal votes [had been] rejected at the polls sufficient to change the result." *N.J.S.A.* 19:29–1(e).

Confronted with such general allegations, Luther claimed, and the trial court agreed, that more specificity was required before the declared election winner is to be put to his or her proofs in an election contest. For that reason, on December 13, 2005, the trial court ordered that Agostini "shall file an amendment to [her p]etition, including exhibits referenced therein, by the 19th day of December[,] 2005." It specifically ordered that *"[t]he amendment shall set forth the facts, circumstances and statutory basis regarding the deficiencies as alleged in the [p]etition,* as amended, and attached exhibits[.]" (Emphasis supplied). Tellingly, Agostini did not object to the form or entry of this order; on the contrary, that order was settled "per the telephone conference among the parties[.]" *See, e.g., R.* 4:42–1(b) (providing for settlement of form of order by consent).

In response, Agostini filed a "first amended verified petition" that, in all material respects, was identical to her initial petition. The sole changes consisted of her addition of a "code key" that summarily categorized statutorily defined requirements, and the use of those codes in respect of her earlier lists of the names, addresses, and political party affiliation of those voters she alleged had illegal votes received, and the names and addresses of those voters she claimed had absentee ballots improperly recorded. Although Agostini's amended petition, via her "code key," purported to set forth the statutory bases for her challenges, nothing in her amended petition satisfied the trial court's December 13, 2005 mandate that "[t]he amendment shall set forth the facts [and] circumstances ... regarding the deficiencies as alleged in the [p]etition." [3]

---

[3] For example, Agostini's amended petition identifies forty-one illegal voters and that, using the "code key," thirty-five are identified as voters who "were not

E.

Since 1891, New Jersey has recognized that, in election contests, "[t]he presumption is with the incumbent[.]" *Lehlbach v. Haynes, supra,* 54 *N.J.L.* at 81, 23 *A.* 422. The election contest statute "makes the reception of illegal votes a ground of contest only when they are sufficient to change the result-that is, not merely to show that the plurality declared for the incumbent is erroneous, but to show that another ... was the person legally elected." *Ibid.* That statute's requirements are clear: "[u]nless the petition states circumstances which *prima facie* render this conclusion probable, it does not present a case within the law." *Ibid.*

The "practice of considering the sufficiency of a petition in a contested election case ... seems to be an indispensable necessity." *In re Clee, supra,* 119 *N.J.L.* at 313–14, 196 *A.* 476. *In re Clee* explains that "it is the duty of the court to see to it that the petitioner states a cause of action under the law before setting in motion the machinery for trying the contest." *Id.* at 326, 196 *A.* 476. It holds that "it is an indispensable requirement that the petition make out a *prima facie* case[,]" noting that "[h]ow such case is to be made out is definitely settled by the statute under which we are proceeding and that statute, by all the cases on the subject, must, *in this respect,* be strictly followed." *Id.* at 329, 196 *A.* 476 (citations omitted). This requirement finds expression in the notion that at the core of all legal proceedings rests the fundamental obligation to place one's opponent on fair notice of what must be defended against. Thus, because under any differ-

---

residents of Parsippany–Troy Hills and were ineligible to cast votes in the election." Yet, of those thirty-five allegedly illegal voters, fourteen of them are identified by Agostini as in fact having a Parsippany address, and an additional two are identified by Agostini as persons whose address is "unknown at present time." If those sixteen alleged illegal voters are deleted from Agostini's aggregate list of forty-one, only twenty-five allegedly illegal voters remain, an amount insufficient to surpass Luther's thirty-nine vote margin and, hence, not "sufficient to change the result" as required by the statute. *N.J.S.A.* 19:29–1(e). This example is but one illustration of the shortcomings inherent in Agostini's pleading, the very shortcomings the statutory requirements seek to avoid.

ent view, "every elected official might be put to a contest ... merely because a petition is filed asking for a contest and stating, generally, the broad grounds of the statute, without detail sufficient to frame an issue against which the incumbent might prepare his defense[,]" the "standard of common sense or principles of justice" require strict observance with the election contest statute's pleading requirements. *Id.* at 329–30, 196 *A.* 476. In this context, our duty is plain: "It is the duty of the court to uphold an election unless it clearly appears that it is illegal [because] public policy so ordains." *Id.* at 330, 196 *A.* 476 (citations omitted).

Applying those principles, Agostini's petition flatly failed to apprise Luther of "the facts [and] circumstances ... regarding the deficiencies as alleged in the [p]etition[,]" information that was required by the December 13, 2005 order and that, more to the point, is crucial in the accelerated and charged atmosphere of an election contest. Furthermore, as a result of the agreed-upon language in the trial court's December 13, 2005 order, Agostini's amended petition should have contained factual representations— not bare conclusions—as to the wherefores and the whys regarding those she identified as legal voters whose votes had been rejected or those she identified as illegal voters. The election contest statute requires that those representations be verified. Thus, to survive Luther's motion to dismiss, Agostini statutorily was obliged to set forth those facts in her petition, verifying them either through her direct knowledge or on information and belief, *N.J.S.A.* 19:29–2. Agostini failed to do so. Agostini also could have submitted affidavits from the legal voters rejected or the illegal votes received; that, also, was not done. Agostini tendered no explanation for those failures, and we should not surmise why.

There are several procedural safeguards within the election contest statute designed to avoid the kind of abuse one may expect from the hurly-burly of the election process. *Supra* at 579–80, 934 *A.*2d at 627. These include the requirement of a verified petition, an accelerated hearing and disposition schedule, and the like. Specifically, the statute provides that, although "[t]he proceedings

shall be similar to those in a civil action[,]" the court will "determine the matter without a jury, with power to order any amendments in the petition, or proceedings as to form or substance, and to allow adjournments to any time not more than thirty days thereafter for the benefit of either party." *N.J.S.A.* 19:29–5. The aggregate of those requirements mandates that election challenges be viewed as akin to "allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence[,]" which our *Rules* specifically require be pled with particularity. *R.* 4:5–8(a).

In the end, Agostini's failure of pleading is dispositive. The statute—which permits the cause of action to exist in the first instance—is founded on a common sense notion: compliance with its terms is a condition precedent to relief under the statute, a conclusion reached over one hundred years ago in *Lehlbach v. Haynes, supra,* and repeated a half-century later in *In re Clee, supra.* We should not ignore the bases and logic—those earlier referenced "standard[s] of common sense or principles of justice"—that undergird the requirement that election contest petitions, from the outset, must set forth sufficient facts to allow the incumbent to fairly defend his or her election. There is no valid justification to abandon this long-standing precedent.

The majority, however, tracks the various amendments to the election contest statute and concludes that the 1920 amendments, which deleted the requirement that the contestant plead "the particular circumstances of the case[,]" simply was ignored by the *In re Clee* court when it rendered its decision in 1938. There is nothing in the language or reasoning of *In re Clee* that admits of such interpretation. On the contrary, any fair reading of *In re Clee* demonstrates beyond doubt that its continued pleading requirement of "the particular circumstances of the case" in election contest matters is driven by the totality of the election contest statutory scheme: the obligation to commence an election contest by verified petition alleging certain limited, statutory grounds,

coupled with the accelerated schedule for disposition of the matter required by the statute.

## II.

One cannot dispute the high-sounding notions that frame the majority's views. Of course, "[f]ree and fair elections are the foundation on which our democracy rests." *Ante* at 549, 934 *A.*2d at 608. Of course, "[t]he right to vote, and to have one's vote counted, is both cherished and fundamental to our way of life." *Ante* at 549, 934 *A.*2d at 608–09. Of course, "[w]e rely on our election laws and on the fair conduct of elections to ensure that the people may be heard through the ballot and that their will, as expressed through their votes, may be effectuated." *Ante* at 549, 934 *A.*2d at 609. Of course, "we can only be certain that the true will of the people has been expressed if we can be confident in the election process itself." *Ante* at 549–50, 934 *A.*2d at 609. And, of course, "[t]he right of a defeated candidate to contest the outcome of an election, while carefully circumscribed, is an important means to ensure that the true will of the people is indeed heard through the ballot box." *Ante* at 550, 934 *A.*2d at 609.

At the same time, however, elections must bring finality, and the election contest procedure cannot be used as an adjunct to a political campaign. That is why election contest petitions must be verified; that is why election contest petitions must particularly describe the election's shortcomings; and that is why election contests must be adjudicated without delay.

In the end, absent the statute's allowance of election contests, there would be no mechanism for election contests at all; allegations of fraud or misconduct in respect of an election would be remedied solely by an award of damages, and not by the extraordinary remedy of voiding an election. *See N.J.S.A.* 19:29–8 (providing that court "shall pronounce judgment whether the incumbent or any contestant was duly elected, and the person so declared elected will be entitled to his certificate"); *N.J.S.A.*

19:29–9 (providing for form and effect of judgment either annulling or setting aside an election); *N.J.S.A.* 19:29–10 (authorizing court to "command the sheriff of the county to put the successful party into possession of the office without delay"). Thus, because of the extraordinary nature of the relief available in an election contest by reason of a statutory grant, prudence requires that the contestant do more than simply place the victor "on notice" that the contestant intends to challenge an election on short notice while camouflaging his or her reasons. Those public policy considerations also militate against allowing Agostini's challenge to proceed forward.

If a contestant seeks to challenge the results of an election, public policy, as expressed by the Legislature, requires that the challenger, in the election contest petition, bear the burden of both production and persuasion. In this context, the challenger must—from the very start—demonstrate that either "illegal votes have been received, or legal votes rejected at the polls sufficient to change the result." *N.J.S.A.* 19:29–1(e). Any action to minimize those requirements downplays the public policy notions so plainly expressed in the election contest statute.

### III.

For the foregoing reasons, I respectfully dissent from so much of the majority's opinion that affirms the judgment of the Appellate Division and allows Agostini's election contest to proceed. Instead, I would reverse the judgment of the Appellate Division and reinstate the reasoned judgment of the Law Division dismissing Agostini's election contest petition.

Justice Wallace joins in this opinion.

*For affirmance as modified and remandment*—Chief Justice RABNER, and Justices LONG and HOENS—3.

*For reversal and reinstatement*—Justices WALLACE and RIVERA–SOTO—2.